# HILL *v.* LOCKHART, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION

No. 84–1103.   Argued October 7, 1985—Decided November 18, 1985

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. WHITE, J., filed an opinion concurring in the judgment, in which STEVENS, J., joined, *post*, p. 60.

*Jack T. Lassiter*, by appointment of the Court, 471 U. S. 1064, argued the cause and filed a brief for petitioner.

*John Steven Clark*, Attorney General of Arkansas, argued the cause for respondent. With him on the brief was *Alice Ann Burns*, Deputy Attorney General.

JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner William Lloyd Hill pleaded guilty in the Arkansas trial court to charges of first-degree murder and theft of property. More than two years later he sought federal habeas relief on the ground that his court-appointed attorney had failed to advise him that, as a second offender, he was required to serve one-half of his sentence before becoming eligible for parole. The United States District Court for the Eastern District of Arkansas denied relief without a hearing, and the en banc Court of Appeals for the Eighth Circuit affirmed by an equally divided court. We granted certiorari because of the difference between the result reached in the present case and that reached by the Court of Appeals for the Fourth Circuit in *Strader* v. *Garrison*, 611 F. 2d 61 (1979). 470 U. S. 1049 (1985). We affirm the judgment of the Court of Appeals for the Eighth Circuit because we conclude that petitioner failed to allege the kind of prejudice from the allegedly incompetent advice of counsel that would have entitled him to a hearing.

Under Arkansas law, the murder charge to which petitioner pleaded guilty carried a potential sentence of 5 to 50

years or life in prison, along with a fine of up to $15,000. Ark. Stat. Ann. §§ 41–1502(3), 41–901(1)(a), 41–1101(1)(a) (1977). Petitioner's court-appointed attorney negotiated a plea agreement pursuant to which the State, in return for petitioner's plea of guilty to both the murder and theft charges, agreed to recommend that the trial judge impose concurrent prison sentences of 35 years for the murder and 10 years for the theft. Petitioner signed a written "plea statement" indicating that he understood the charges against him and the consequences of pleading guilty, that his plea had not been induced "by any force, threat, or promise" apart from the plea agreement itself, that he realized that the trial judge was not bound by the plea agreement and retained the sole "power of sentence," and that he had discussed the plea agreement with his attorney and was satisfied with his attorney's advice. The last two lines of the "plea statement," just above petitioner's signature, read: "I am aware of everything in this document. I fully understand what my rights are, and I voluntarily plead guilty because I am guilty as charged."

Petitioner appeared before the trial judge at the plea hearing, recounted the events that gave rise to the charges against him, affirmed that he had signed and understood the written "plea statement," reiterated that no "threats or promises" had been made to him other than the plea agreement itself, and entered a plea of guilty to both charges. The trial judge accepted the guilty plea and sentenced petitioner in accordance with the State's recommendations. The trial judge also granted petitioner credit for the time he had already served in prison, and told petitioner that "[y]ou will be required to serve at least one-third of your time before you are eligible for parole."

More than two years later petitioner filed a federal habeas corpus petition alleging, *inter alia,* that his guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him as to his parole eligi-

bility date. According to petitioner, his attorney had told him that if he pleaded guilty he would become eligible for parole after serving one-third of his prison sentence. In fact, because petitioner previously had been convicted of a felony in Florida, he was classified under Arkansas law as a "second offender" and was required to serve one-half of his sentence before becoming eligible for parole. Ark. Stat. Ann. § 43–2829B(3) (1977). Petitioner asked the United States District Court for the Eastern District of Arkansas to reduce his sentence to a term of years that would result in his becoming eligible for parole in conformance with his original expectations.

The District Court denied habeas relief without a hearing. The court noted that neither Arkansas nor federal law required that petitioner be informed of his parole eligibility date prior to pleading guilty, and concluded that, even if petitioner was misled by his attorney's advice, parole eligibility "is not such a consequence of [petitioner's] guilty plea that such misinformation renders his plea involuntary." The court also held that "even if an attorney's advice concerning such eligibility is not wholly accurate, such advice does not render that attorney's performance constitutionally inadequate."

A divided panel of the Court of Appeals for the Eighth Circuit affirmed, holding that parole eligibility is a collateral rather than a direct consequence of a guilty plea, of which a defendant need not be informed, and that the District Court did not err in declining to hold a hearing on petitioner's claims. 731 F. 2d 568, 570–573 (1984). One judge dissented, arguing that a hearing should have been held to determine whether the attorney's alleged mistake in informing petitioner about "the applicable law" constituted ineffective assistance of counsel and warranted vacating the guilty plea. Id., at 573–574 (Heaney, J., dissenting). On rehearing, the en banc Court of Appeals affirmed the judgment of the Dis-

trict Court by an equally divided court. 764 F. 2d 1279 (1985).

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina* v. *Alford,* 400 U. S. 25, 31 (1970); see *Boykin* v. *Alabama,* 395 U. S. 238, 242 (1969); *Machibroda* v. *United States,* 368 U. S. 487, 493 (1962). Here petitioner does not contend that his plea was "involuntary" or "unintelligent" simply because the State through its officials failed to supply him with information about his parole eligibility date. We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts. See Fed. Rule Crim. Proc. 11(c); Advisory Committee's Notes on 1974 Amendment to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 22 (federal courts generally are not required to inform defendant about parole eligibility before accepting guilty plea). Instead, petitioner relies entirely on the claim that his plea was "involuntary" as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous. Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann* v. *Richardson,* 397 U. S. 759, 771 (1970). As we explained in *Tollett* v. *Henderson,* 411 U. S. 258 (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from coun-

sel was not within the standards set forth in *McMann.*" *Id.*, at 267.

Our concern in *McMann* v. *Richardson* with the quality of counsel's performance in advising a defendant whether to plead guilty stemmed from the more general principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel." 397 U. S., at 771, and n. 14; see *Reece* v. *Georgia,* 350 U. S. 85, 90 (1955); *Powell* v. *Alabama,* 287 U. S. 45 (1932). Two Terms ago, in *Strickland* v. *Washington,* 466 U. S. 668 (1984), we adopted a two-part standard for evaluating claims of ineffective assistance of counsel. There, citing *McMann,* we reiterated that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U. S., at 687–688. We also held, however, that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694. This additional "prejudice" requirement was based on our conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.,* at 691.

Although our decision in *Strickland* v. *Washington* dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in *Strickland* v. *Washington* are also relevant in the context of guilty pleas:

"The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in

an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Id.*, at 693.

In addition, we believe that requiring a showing of "prejudice" from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas we identified in *United States* v. *Timmreck,* 441 U. S. 780 (1979):

"'Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'" *Id.*, at 784 (quoting *United States* v. *Smith,* 440 F. 2d 521, 528–529 (CA7 1971) (Stevens, J., dissenting)).

We hold, therefore, that the two-part *Strickland* v. *Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland* v. *Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett* v. *Henderson, supra,* and

*McMann* v. *Richardson, supra.* The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.*

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, *e. g., Evans* v. *Meyer*, 742 F. 2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland* v. *Washington, supra*, these predic-

---

*Several Courts of Appeals have adopted this general approach. See *Thomas* v. *Lockhart*, 738 F. 2d 304, 307 (CA8 1984); accord, *United States* v. *Gavilan*, 761 F. 2d 226, 228 (CA5 1985); *Beans* v. *Black*, 757 F. 2d 933, 936–937 (CA8 1985); *Mitchell* v. *Scully*, 746 F. 2d 951, 957 (CA2 1984); *Evans* v. *Meyer*, 742 F. 2d 371, 374–375 (CA7 1984).

tions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, at 695.

In the present case the claimed error of counsel is erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain. App. 31. We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland* v. *Washington* requirement of "prejudice." Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

Because petitioner in this case failed to allege the kind of "prejudice" necessary to satisfy the second half of the *Strickland* v. *Washington* test, the District Court did not err in declining to hold a hearing on petitioner's ineffective assistance of counsel claim. The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE WHITE, with whom JUSTICE STEVENS joins, concurring in the judgment.

The only question properly before the Court is whether petitioner is entitled to an evidentiary hearing in a federal habeas proceeding where he has alleged that his guilty plea

entered in state court was involuntary and resulted from ineffective assistance of counsel. I write separately to state why, under the particular facts of this case, petitioner is not entitled to an evidentiary hearing on his habeas claim of ineffective assistance of counsel.

It is necessary, in my view, to focus on the "plea statement" signed by petitioner. The statement is a standardized form to be completed by defense counsel, in consultation with his client, and submitted to the court for consideration. The form calls for the insertion of specific information in the appropriate spaces. Among the items to be included are the crime with which the defendant is charged, whether that crime is a felony or a misdemeanor, and the maximum sentence and/or fine defendant could receive if found guilty of the offense. There is also a blank space in which to indicate the number of prior convictions which the defendant has suffered. App. 28.

As the majority indicates, petitioner signed such a written "plea statement" indicating that he understood the charges against him, the consequences of pleading guilty, and that he was "aware of everything in this document." *Ante*, at 54; App. 28. In the space provided for disclosing the number of prior convictions, petitioner's form reads "0." *Ibid.*

Although it is unclear whether petitioner or his counsel filled out the form and inserted this number, there is no allegation that petitioner told his attorney about his previous Florida felony conviction. Indeed, it is incredible that the attorney would have filled in the "0" had he known there was a prior conviction. Petitioner thus has no factual basis for suggesting that his attorney's advice was incompetent, or that he was affirmatively misled by counsel as to his earliest possible parole eligibility date. Without an allegation that the attorney knew of petitioner's prior conviction, but failed to inform him of the applicability of the Arkansas "second offender" statute, there is no reason to provide petitioner with an evidentiary hearing on his claim of ineffective assistance

of counsel. None of his allegations, if proved, would entitle petitioner to relief, as there is nothing in the record to indicate "that [defense] counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington*, 466 U. S. 668, 687–688 (1984); see also *McMann* v. *Richardson*, 397 U. S. 759, 771 (1970).

Were it not for the misinformation in the plea statement — had petitioner's attorney known of a prior conviction and still informed petitioner that he would be eligible for parole after serving one-third of his sentence—petitioner would be entitled to an evidentiary hearing and an opportunity to prove that counsel's failure to advise of him of the effect of Ark. Stat. Ann. § 43–2829B(3) (1977) amounted to ineffective assistance of counsel. The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis adopted by the majority, as such an omission cannot be said to fall within "the wide range of professionally competent assistance" demanded by the Sixth Amendment. *Strickland* v. *Washington, supra*, at 690.

Moreover, an examination of the record reveals that petitioner alleged sufficient facts to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ante*, at 59. In the first two paragraphs of his habeas petition, petitioner alleged, in pertinent part, as follows:

> "I agreed to plead guilty with the understanding that I'd get 35 yrs. for 1st degree murder & 10 years concurrent for theft of property, and that I would only have 1/3 of my sentence to do, less good time. . . .
>
> "My lawyer told me that a plea negotiation was binding to both sides and that the Court would impose the sentence agreed to by me and the prosecutor. I did not know that the Court could deviate from the concessions agreed to without informing me, nor that it could say to do 1/3 minimum enstead *[sic]* of just 1/3, until parole." App. 8–9.

Later, petitioner made the following objections to the Magistrate's proposed order:

> "Petitioner's first two arguments should be restated to allege that his guilty plea was involuntary in that his counsel improperly advised him as to his earliest possible parole eligibility date and as a result of that incorrect advice the Petitioner did not fully understand the consequences of his plea." *Id.*, at 40.

> "The Petitioner contends that his counsel's erroneous advice concerning his potential parole eligibility date was a critical factor in his decision to enter a guilty plea. It was an important consequence of his plea which he did not understand." *Id.*, at 41–42.

> "It is Petitioner's contention that he would not have entered the negotiated plea had his attorney correctly advised him that he would be required to serve one-half of his sentence less good time under Arkansas law." *Id.*, at 46–47.

In sum, because petitioner failed to allege that his attorney knew about his prior conviction but failed to inform him of the applicability of Ark. Stat. Ann. § 43–2829B(3) (1977), I find that petitioner did not allege sufficient facts to entitle him to an evidentiary hearing on his ineffective-assistance-of-counsel claim. Had petitioner made such an allegation, however, he would be entitled to such a hearing, as he clearly alleged more than sufficient facts that, if proved, would show that he was prejudiced by his counsel's error, and thus entitled to habeas relief.