In the

# United States Court of Appeals

### For the Seventh Circuit

No. 03-1126

GREGORY J. MOORE,

*Petitioner-Appellee,*

*v.*

STEVEN C. BRYANT,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00 C 2119—**Michael P. McCuskey,** *Judge.*

ARGUED SEPTEMBER 5, 2003—DECIDED OCTOBER 23, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* This petition for habeas corpus brought by Gregory Moore under 28 U.S.C. § 2254 is before this court for the second time. In our prior opinion, we held that Moore did not procedurally default his claim of ineffective assistance of counsel in state court, and we remanded the case for consideration of the merits of his claim. *Moore v. Bryant*, 295 F.3d 771 (7th Cir. 2002). On remand, the district court granted habeas relief, holding that the state court decision rejecting his ineffectiveness claim was an unreasonable application of established Supreme Court law, and that Moore's counsel's inaccurate advice regarding Moore's potential sentence was a material factor that in all probability impacted his decision

to plead guilty. The state has appealed that determination by the district court, and we affirm.

The facts underlying Moore's claim are set forth in our prior opinion, and will be repeated here only to the extent necessary for this appeal. At the age of 15, Moore was charged as an adult with first degree murder. Although the evidence demonstrated that Moore was not present at the shooting and was not a shooter, the state's theory of criminal liability was based upon Moore's involvement as one of a group of individuals who chased the victim. Moore maintained his innocence during the pre-trial process. In May 1995, just before the case was scheduled for trial, Moore pled guilty in exchange for the state's recommendation that he receive the minimum 20-year prison sentence. Shortly thereafter, however, Moore sought to withdraw the plea. In his amended motion to withdraw the guilty plea, Moore alleged that the plea was not knowing and voluntary for a number of reasons, including the erroneous advice given to him by his attorney. He alleged that his attorney had informed him that the law in Illinois was changing and that good-time credits to which he currently would be entitled were being limited. As a result of that change in Illinois law, his attorney told him that, if convicted, he would serve 85% of the sentence imposed, whereas if he pled guilty immediately, he would serve, under current Illinois law, only 50% of a 20-year sentence. The attorney informed him that his sentence if convicted would be between 25 and 30 years. Therefore, based on the advice regarding the impending revision to the good-time credit statute, Moore was faced with the prospect of a 10-year sentence if he pled guilty, or a 22-27 year sentence if he proceeded to trial and was convicted. That advice was erroneous. The revision to the good-time credit statute was not retroactive, and the state does not present any argument that the advice was a correct interpretation of the law. Instead of facing the choice be-

tween a 10-year sentence and a 22-27 year sentence, Moore in actuality was facing the choice between a 10-year sentence and a 12½-15 year sentence. The difference is substantial by any measure. Nevertheless, the state court rejected Moore's argument and the issue in this case is whether the district court properly held that the state court decision was an unreasonable interpretation of Supreme Court law.

We review this petition for habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). According to the AEDPA, Moore cannot succeed on his petition unless he can demonstrate that the state court decision was contrary to or an unreasonable application of clearly established Supreme Court law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. 2254(d). A "'state court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case' qualifies as a decision involving an unreasonable application of clearly established federal law." *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001), *quoting Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

The state first asserts that Moore's counsel did not advise Moore that he would serve 85% of his sentence if he lost after a trial. That argument is belied by the record. Moore submitted an affidavit stating that he was so informed, and that was corroborated by his attorney. Specifically, Moore's trial attorney stated that in his conversation with Moore prior to Moore's decision changing his plea.

> [O]ne concern I had and one concern Greg had was if he accepted the plea, how long would he be in prison. At that time, in [1995], the law regarding good time was changing . . . . At the time I was discussing the of-

fer with Greg, it wasn't clear whether that law was going to be retroactive, whether legally it could be retroactive. I had some concerns about it.

So, in discussing the plea with Greg, that issue came up. I didn't have the statute in front of me. It hadn't become law yet.

So, for a while, that was an issue, would he have to spend 85 percent of 20 years, 100 percent of 20 years, 50 percent of 20 years. And that we spent a long time discussing that aspect of it.

Hearing on Amended Motion to Withdraw Guilty Plea at 28. Moore's attorney, then, acknowledged discussing at length the impact of the impending change in good-time credits, and even listed the options considered. Although Moore's attorney does not identify the conclusion he reached on the issue or the advice ultimately given, Moore's affidavit that he was informed he would likely face 85% of a 25-30 year sentence is consistent with his attorney's testimony. Although the testimony quoted above recites percentages of a 20-year sentence, Moore's attorney further testified that he told Moore that if Moore lost at trial, the sentence "would of necessity be higher than 20 years." Hearing at 29-30. Therefore, Moore's details of the conversation are indeed consistent with the testimony of his attorney. There is thus no record support for the state's contention that Moore's attorney never so advised Moore.

We turn, then, to the question of whether that advice constituted ineffective assistance of counsel, and whether the state court was unreasonable in determining that it did not. In order to demonstrate ineffective assistance in the context of a guilty plea, Moore must demonstrate that his counsel's advice regarding the plea was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, Moore would not have pled

guilty, but would have insisted upon a trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984). We have identified the criteria that apply regarding an attorney's advice concerning an offer of a plea agreement. A reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty. *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996). "Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or going to trial, the scrutiny must be undertaken in good faith." *Id.* at 939-40. When the attorney fails to do so and that failure is the decisive factor in the decision to plead guilty, the Sixth Amendment is violated and the defendant may withdraw his plea. *Id.* at 940. The district court properly held that this standard was met here.

The state does not contend that Moore's counsel was legally correct when he advised Moore that the good-time credits could severely lengthen his sentence if he proceeded to trial and lost. The statute ultimately passed was not retroactive, and Illinois Supreme Court caselaw in existence at the time the advice was given held that such changes in good-time credits could not be retroactively applied. *Barger v. Peters*, 645 N.E.2d 175, 177 (Ill. 1994). Nor does the state demonstrate that Moore's counsel made a reasoned legal decision based on the relevant factors. We have noted that the deficient performance prong is met where the inaccurate advice "resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). The record in this case illustrates such deficient performance. Moore's counsel acknowledged that he did not have the statute with him when providing the

advice, and he acknowledged that he was uncertain as to its effect. There is no evidence that he subsequently examined the statute, nor is there evidence that he analyzed the caselaw regarding the retroactivity issue, which would have resolved his concerns as there was a very recent Illinois Supreme Court decision on point. Where erroneous advice is provided regarding the sentence likely to be served if the defendant chooses to proceed to trial, and that erroneous advice stems from the failure to review the statute or caselaw that the attorney knew to be relevant, the attorney has failed to engage in the type of good-faith analysis of the relevant facts and applicable legal principles, and therefore the deficient performance prong is met.

The state argues that an attorney is not required to inform himself of pending legislative changes in order to meet the standard of competence, but we need not even consider that issue. Here, we are not presented with an attorney's failure to inform a client of an impending legislative change, but rather with misinformation provided by an attorney on an issue that is certainly critical to the plea decision—the length of the sentence that the defendant faces—and that misinformation is the result of the attorney's failure to examine the statute and the law that the attorney himself identified as relevant. Regardless of whether an attorney must anticipate legislative changes, if an attorney chooses to provide such information, his/her conduct may be considered objectively unreasonable if the attorney fails to conduct a good-faith inquiry and that information is materially false.

That does not end the inquiry, however, because Moore must also establish that there was a reasonable probability that, but for the erroneous advice, he would not have pled guilty. *Hill*, 474 U.S. at 59. Moore submitted an affidavit in which he contended that he pled guilty because of his attorney's advice regarding the impact of the

good-time credits and the resulting disparity in sentence between the guilty plea and a conviction. That is consistent with his testimony at the hearing on his motion to withdraw the plea. Furthermore, that contention is supported by the history of the pre-trial process in this case. Throughout the process prior to that discussion, Moore maintained his innocence and refused a guilty plea. As the case was about to proceed to trial, his attorney again discussed the possibility of a plea with him. Moore's trial counsel testified that at that time, he and Moore discussed at length the potential sentencing impact of the legislative revisions to the good-time credits. His attorney's advice dramatically altered the choice faced by Moore. Instead of serving 10 years if he pled guilty, or 12½-15 if he lost at trial, Moore was presented with the prospect of serving 10 years if he pled guilty or 22-27 years if he was convicted at trial. That difference nearly doubled the amount of time he would face if he proceeded to trial, and that is precisely the type of information that is likely to impact a plea decision. After that discussion, Moore changed his plea, although he did so reluctantly. In fact, at the first change of plea hearing, he said he did not wish to proceed, and shortly after entering the guilty plea he moved to withdraw it. Therefore, the record evidence, the history of the plea discussions, and the nature of the misinformation establish that there was a reasonable probability that but for the erroneous advice, Moore would not have pled guilty.

The final question is whether the state court acted unreasonably in determining otherwise. The state court rejected the ineffective assistance claim on two grounds. First, the court held that the trial court "thoroughly and completely admonished defendant as to the consequences of his guilty plea." and the "defendant's responses to the court's questions do not reveal any misunderstanding or hesitancy in his decision to plead guilty." That observa-

tion by the court, however, is irrelevant to the issue presented here, which is whether the erroneous advice provided by counsel caused Moore to enter a plea he otherwise would not have entered, because it assumes that Moore was aware of the error in that advice at the time he entered the plea of guilty. If, as the record establishes, Moore was not aware that the sentence advice was erroneous, then his responses concerning the voluntariness of his plea and his acknowledgment of his rights do nothing to address the underlying problem. Nothing in that colloquy addressed whether his plea was based upon any predictions as to his sentence, nor did it otherwise alert Moore to the possibility that he was misinformed as to the choice he faced. Because nothing in the plea colloquy addressed the length of sentence or the impact of good-time credits that he was likely to face if he went to trial and lost, that sequence of questions did nothing to ameliorate the adverse impact of his counsel's misinformation. The state court's reliance on the plea colloquy as a panacea for Moore's attorney's deficient performance is without legal precedent where the colloquy did not even address the basis for that deficient performance, and thus is an unreasonable application of the *Strickland* test.

The alternative basis provided by the court fares no better. The court held that the prejudice prong was not met because the record did not show that the alleged misunderstanding regarding good-time credit "in any way" affected the voluntariness of Moore's guilty plea. The court did not base that opinion upon any credibility determination, but rather appeared to believe that the record contained no support for his claim that his plea decision was based on the misinformation. At the hearing for the change of plea, however, the first issue raised by Moore in discussing his decision to plead guilty was the advice his attorney gave him regarding the impact of the upcom-

ing change in good-time credits on the sentence he was likely to serve. Moore further noted that this conversation occurred approximately a week before trial, and prior to that conversation he had refused to plead guilty, and that he always has maintained his innocence of the charges. The testimony by Moore's attorney confirms that the effect of the good-time credit statute on his potential sentence was a key issue in their discussions prior to Moore's decision to plead guilty, and that they discussed the issue at length. The state court made no attempt to reconcile its holding with those statements by Moore or the corroboration by Moore's attorney. Absent some credibility determination, the state court's statement that the record does not show that the misunderstanding in any way affected the voluntariness of his plea is an unreasonable application of the facts to the law. Therefore, we agree with the district court that the state court's rejection of his ineffective assistance claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. The decision of the district court granting the writ of habeas corpus under 28 U.S.C. § 2254 is AFFIRMED. The State shall have 120 days from the date of the issuance of this opinion to release or retry Moore.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*