F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**NOV 19 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VERNON P. THOMAS,

       Petitioner - Appellant,

v.

MICHAEL A. NELSON, El Dorado
Correctional Facility; ATTORNEY
GENERAL OF KANSAS,

       Respondents - Appellees.

No. 03-3308
(D.C. No. 02-CV-3217-JTM)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.


       Petitioner-Appellant, Vernon P. Thomas, appeals the denial of his petition for a writ

of habeas corpus under 28 U.S.C. § 2254. We granted him a certificate of appealability to

challenge the district court's refusal to provide an evidentiary hearing on his claim of

ineffective assistance of counsel. Petitioner claims his state-appointed attorney coerced

---

      [*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

him into pleading guilty and foregoing trial in violation of his rights under the Sixth

Amendment. Because Mr. Thomas has cleared "the initial hurdle" of § 2254(e)(2), by

attempting to develop the factual basis of his claim in state court, *Miller v. Champion*, 161

F.3d 1249, 1253 (10th Cir. 1998), we hold the district court prematurely dismissed the

petition and must conduct an evidentiary hearing solely on Petitioner's ineffective

assistance claim.[1]

In August 1994, Mr. Thomas was charged in a Kansas court with several counts of

aggravated burglary, robbery, and kidnapping arising out of a series of purported crimes.

The state court appointed attorney Dan Phillips to represent Mr. Thomas. At the time of

his appointment, Mr. Phillips was addicted to crack cocaine and, during the week before

Mr. Thomas' scheduled trial, had sought inpatient treatment for his addiction.[2] The direct

effect of that act, if any, is not immediately apparent. However, Mr. Thomas' contention

that Mr. Phillips failed to perform expected tasks, including the filing of pretrial motions,

---

[1] The Respondents-Appellees concede pre-AEDPA standards govern Mr. Thomas' request for an evidentiary hearing. They have also not controverted his statement of the case and the pertinent facts.

[2] Mr. Phillips checked into an inpatient rehabilitation program on November 9, 1994. Mr. Thomas' trial was scheduled to begin on November 14, 1994. In a 1996 order, *Matter of Phillips*, 925 P.2d 435 (Kan. 1996), Mr. Phillips was placed on supervised probation for three years as a consequence of his addiction that had resulted in violations of his attorney-client responsibilities. During that probationary period, Mr. Phillips repeatedly tested positive for cocaine, triggering revocation of his supervised probation by the Kansas Supreme Court and indefinite suspension from the practice of law in Kansas. *In re Phillips*, 32 P.3d 704 (Kan. 2001).

attending the final pre-trial conference, or signing the report from that conference, is not controverted.

Mr. Thomas asserts, also without contradiction, he clashed with Mr. Phillips from the beginning of their relationship. Indeed, at a hearing just before the start of trial, Mr. Thomas asked for a new attorney. Among the reasons for the request, Mr. Thomas advised the court Mr. Phillips believed his client was guilty; he also asserted Mr. Phillips had led him to believe trial was not to commence that day. Mr. Thomas stated he was told he was to appear in another case before another judge. Ultimately, the court gave Mr. Thomas the choice of hiring another attorney for the trial that was about to begin or of going forward with Mr. Phillips as his counsel. The court added, "Mr. Thomas, not getting along with your attorney is not a reason to change lawyers. You are entitled to a competent lawyer to represent you. Mr. Phillips exceeds that standard by far." He further advised, because trial was set to begin, "[t]his is not the time to entertain a motion for a new attorney based on the fact that [he] has expressed an opinion whether you're guilty." The court professed its "great confidence" Mr. Phillips would "zealously defend you despite his open personal beliefs."

In response to Mr. Thomas' continued objection that he was not aware he was to go to trial that day, the prosecutor informed the court Mr. Thomas had pled guilty in another case before Judge Clark, in which a sentencing had been scheduled on that day as well. Mr. Phillips then launched into a lengthy dissertation on the history of both cases,

including the fact that Mr. Thomas had reneged on his prior agreement to enter a plea of guilty in the other case pending before Judge Clark and wanted to go to trial in both cases with another attorney.

Pointing out that in the previous "four to six weeks" Mr. Thomas had not filed a pro se motion for new counsel, Mr. Phillips announced, "I want to continue. I have given my client advice as it related to the counts in this case," including whether he went to trial was solely Mr. Thomas' decision. Mr. Phillips informed the court, "[I]n the course of the last week I've met with [Mr. Thomas] approximately four times."[3]

When finally given a chance to respond, Mr. Thomas asserted in prior discussions with the district attorney, Mr. Phillips had engineered Mr. Thomas' arrest in the present case. He claimed the arrest took place after he entered a plea in the other case before Judge Clark.[4] Petitioner also asserted he had complained to Judge Clark by letter and asked for new counsel. Mr. Thomas declared he was told he had to appear before Judge Clark in person to make that request.

Based upon her personal experience, the trial court disbelieved that advice. She stated as a private attorney, "I have been in Mr. Phillips' position on many occasions, and I know the routine." That "routine" requires the filing of a written motion for new counsel.

---

[3] His later disciplinary decision reveals Mr. Phillips was in the inpatient program at that time, making the assertion improbable. *See **Matter of Phillips**,* 925 P.2d 435, 438 (Kan. 1996).

[4] Mr. Phillips later denied responsibility for the timing of the arrest and claimed he merely told Mr. Thomas detectives wanted to talk to him.

The court repeated the reasons offered by Mr. Thomas for substitution of counsel were "not sufficient."

When Mr. Thomas protested, "[H]ow can I go to a trial with a man [who believes I am guilty?]," the court interrupted, "I'm overruling your motion. We're going to trial." Whereupon Mr. Thomas stated, "I guess there's nothing else I can say, Your Honor," prompting the court to make a "specific finding." The court, obviously impressed by Mr. Phillips' assertion he had spent a great amount of time in pre-trial preparation with Mr. Thomas "especially on a Sunday evening," found Mr. Phillips "competent." It added for Mr. Thomas to believe an attorney would visit him for four days in the previous week and also for 45 minutes on a Sunday night only to discuss a sentencing hearing was "unreasonable."[5] The court reminded Mr. Thomas if he wanted to hire a new attorney he could do so, but trial would begin in 45 minutes. Mr. Phillips then asked for and was granted a recess to meet with Mr. Thomas.

After the break, Mr. Thomas stated he wanted to proceed to trial, and the court assured him that despite her strong words before, Mr. Thomas had every right to expect a fair trial. Jury selection began. Shortly thereafter, though, Mr. Thomas decided he would plead guilty to all charges. In return, the State agreed to recommend "a controlling

---

[5] It does not appear that during this entire proceeding, the trial court was aware of Mr. Phillips' participation in the inpatient rehabilitation program that had started only days before.

sentence of 15 years to life in prison," the maximum for each kidnapping charge, to run consecutively to that in the prior theft case.

The court held the change of plea hearing the next day and explained the possible sentence, which was complicated by the fact the offenses charged occurred before the effective date of the Kansas sentencing guidelines, July 1, 1993. The court then asked, "[W]as there some talk about a request to impose the habitual criminal acts [sic] [HCOA] on the other [pre-guideline] counts at all?" When the prosecutor said yes, the court asserted, "That would not be entertained as well *under these plea negotiations*." (emphasis added). The prosecutor responded, "That's correct, and I'm not even sure it would be legally possible." The court retorted, "Well, it isn't going to happen anyway *with this plea agreement.*" (emphasis added).

Before accepting the plea, the court addressed specific questions to Mr. Thomas regarding his understanding of his rights and the offenses of which he was charged. The court specifically queried whether Mr. Thomas was "satisfied with [Mr. Phillips'] services as your lawyer?" Petitioner responded, "Yes, I am."

Sentencing was held on December 21, 1994. After ascertaining the parties were prepared to proceed, the court read the plea bargain into the record and turned to counsel for allocution. After a strong statement for severe punishment and "no mercy" made by a prosecutor new to the case, Mr. Phillips addressed the court.

He advised the court he had no mitigating evidence to offer, but only wanted to make "some comments." He stated:

> Maybe one of the most fortunate things about Vernon is he got caught before somebody really got injured. I think that's perhaps the attitude of everyone involved. I know you have a couple of letters that reflect Vernon's early life history, and I think those may have been some things that you would get an impression that set him on the road to where he is now. Those are by no means excuses as to why he is standing before you today. At some point in the road he has to make a decision.
>
> Now, Your Honor is fully aware of my views on drug addiction, and that's hit home in my own household. [I]n Vernon's case not only did it harm him, but it harmed the community as a whole. . . .

Mr. Phillips continued Mr. Thomas was accepting responsibility for his crimes and not blaming anyone else for his behavior, even though he "was influenced by other individuals." He added, "Vernon's very lucky he wasn't shot [by the victims]. At some point in time in this."

Repulsed by what she termed "the heinous facts" of the case, the court refused to follow the plea agreement on sentencing. She then sentenced Mr. Thomas to 30 years to life, running two of the three kidnapping counts consecutively.

After exhausting all his state post-conviction remedies, Mr. Thomas filed his pro se petition in this action. In one of his three claims, Mr. Thomas asserted the fact of Mr. Phillips' discipline was itself evidence of his inability to render effective assistance to Mr.

Thomas. He argued, in effect, Mr. Phillips' discipline for addiction-induced derelictions of responsibility to clients was prima facie evidence supporting the claim.

The district court denied each of Mr. Thomas' claims for relief. In particular, the court summarily rejected the ineffectiveness claim without an evidentiary hearing. Mr. Thomas appealed, again pro se, and this court appointed counsel who filed an supplemental opening brief on his behalf.

Mr. Thomas now argues the district court's denial of his Sixth Amendment claim without holding an evidentiary hearing was error. He further urges this court could grant him the writ without a remand because the record establishes the Kansas Court of Appeals' decision was contrary to or an unreasonable application of *Hill v. Lockhart*, 474 U.S. 52 (1985) (two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

First, because Petitioner had diligently and persistently attempted to develop the factual record in the state courts, he contends he did not have to meet the standard of 28 U.S.C. § 2254(e)(2)[6] and "is entitled to receive an evidentiary hearing so long as his

---

[6] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

      (A) the claim relies on–
            (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
            (ii) a factual predicate that could not have been previously

(continued...)

allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller*, 161 F.3d at 1253. Second, Mr. Thomas argues the present record permits habeas relief under clearly established law because it establishes at least a reasonable probability he would not have pled guilty but for the erroneous advice counsel gave him that if he did not plead, he would be sentenced under the HCOA and his sentence tripled. Counsel asserts Mr. Phillips assumed Mr. Thomas was eligible for HCOA sentencing because Mr. Phillips failed to conduct any independent investigation to determine that fact.[7] On the basis of that uninformed assumption, Mr. Phillips coerced Mr. Thomas to plead guilty.

Petitioner's first argument relies principally on *Miller* in which the petitioner claimed he was not made aware of the elements of the offense when he pled guilty to second-degree murder. Had he known one element of the offense was a depraved mind, he would have gone to trial on the first degree murder charge using his intoxication as a defense. *Id.* at 1251. In *Miller*, the factual record was deemed skeletal, comprised only of the killing after a fight when Miller, without contradiction, was extremely intoxicated. *Id.*

---

[6](...continued)
discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[7] Counsel posits as a factual matter Mr. Thomas could not be sentenced under the HCOA.

at 1257.  The only factual statement there, like here, was Miller's recitation of the plea agreement.  *Id*.  Defense counsel never informed Miller of the element of depraved mind, and we concluded that allegation satisfied the first test in *Strickland*.  We held without an evidentiary hearing on his petition, "the court was unable to explore whether Mr. Miller's intoxication rendered him legally incapable of forming the requisite intent to support a second-degree murder conviction."  *Id.* at 1258.  A jury might have acquitted him of the charge entirely.  Thus, we decided the district court erred by denying an evidentiary hearing to determine whether *Strickland* was met.  *Id.* at 1259.

Mr. Thomas contends the record here establishes Mr. Phillips never reviewed his client's criminal history before he advised Mr. Thomas to plead guilty.  That inquiry would have demonstrated Mr. Thomas had no prior felony convictions to expose him to HCOA status.  He maintains the Respondents' contention that the sentencing hearing statement by the prosecutor does not contradict his contention that he was given bad advice.  Mr. Thomas maintains the suggestion by the prosecutor that he was not sure HCOA applied, does not negate the belief he was given by his counsel that only by accepting the plea agreement could Mr. Thomas avoid the HCOA.  That allegation, he insists, satisfies *Strickland's* first test of performance falling below an objectively reasonable standard of competence.

Mr. Thomas argues there is a logical and necessary inference that the impact of the uninformed advice from his counsel affected his decision.  Counsel reminds the choice

was made after his heated interchange with the judge and while the jury panel was being qualified. He argues that the threat of HCOA sentencing, based on a failure to investigate and under the circumstances of Mr. Phillips' addiction, is sufficient to mandate an evidentiary hearing.

Further, Petitioner contends the Respondents offer little evidence of what proof the prosecution planned to use at trial. Mr. Thomas insists he had not committed certain robberies but merely received the proceeds and pawned them. He states he was never identified by the victims. Given that he only read the factual statement in the plea agreement, Mr. Thomas insists he has satisfied - at least for purposes of qualifying for an evidentiary hearing - the second test, the result might have been different.

Mr. Thomas contends also this panel could remand for entry of the writ because of the clear violation of the Sixth Amendment. *Hill v. Lockhart*, 478 U.S. at 52. Although the Kansas Court of Appeals "apparently" accepted as true the allegation about the advice given on the HCOA, the court stated it could not tell on the record whether the advice was erroneous. Mr. Thomas had appended his criminal history to the pro se record filed in his state habeas action. That record apparently shows no prior felonies. Most importantly, Petitioner insists, the record absolutely establishes he would not have pled guilty absent the erroneous advice.

The Respondents insist the record discredits these arguments. The plea agreement did not mention the HCOA. Moreover, if habitual criminal status was so critical to Mr.

Thomas, he would have raised it during the plea colloquy. Yet, Mr. Thomas told the court during the plea that there were no threats or promises made and professed a deep religiously motivated desire to set his life in order. Furthermore, Respondents argue, the plea agreement offered Mr. Thomas a great benefit because with a controlling term of 15 years to life, he avoided sentence on the possible other 10 counts he faced. Finally, the Respondents urge Mr. Thomas cannot establish prejudice.

The Respondents contend that to adopt Petitioner's argument on the performance element of *Strickland*, we must hold defense counsel's drug addiction, standing alone, amounts to ineffective assistance of counsel. However, they observe, no Circuit has adopted that position, nor has Mr. Thomas shown the precise connection between the addiction and the poor performance.

The Respondents insist Mr. Thomas cannot show his counsel was ineffective and, if so, he was prejudiced by that performance. They reject Mr. Thomas' contention this court can remand with the instruction to grant the writ, emphasizing that - under all of the hindsight circumstances - prejudice still cannot be shown.

Our view, however, leads us to conclude that at this stage Mr. Thomas has provided a sufficient record to merit the opportunity to present evidence in support of his claim concerning Mr. Phillips' inadequate preparation. Indeed, in consideration of Mr. Phillips' participation in the inpatient rehabilitation program already documented by the Kansas Supreme Court, his representation to the Kansas trial court that he had spent the same

period in preparation of his client's case appears disingenuous. That fact certainly leads to the possibility Mr. Phillips failed to adequately prepare his defense.[8] Mr. Thomas also has presented a record that implies he pled guilty only to escape punishment under the HCOA. If proven, these factors justify issuance of habeas relief.

A remarkably similar case supports this conclusion. *See **Moore v. Bryant***, 348 F.3d 238 (7th Cir. 2003). In that case, the Seventh Circuit affirmed entry of the writ based on counsel's ineffective assistance in giving the petitioner erroneous advice about the potential sentence (change in good time credits) he could face if he proceeded to trial and did not accept the State's plea offer. First, the court agreed that counsel provided erroneous advice based on a failure to investigate the specific statute upon which it gave the advice. The court stated:

> We have identified the criteria that apply regarding an attorney's advice concerning an offer of a plea agreement. A reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.

348 F.3d at 241. Citing **United States v. Barnes**, 83 F.3d 934, 939 (7th Cir. 1996).

---

[8] Yet, we do not go beyond that suggestion, as Respondents argue we must. We are not holding the mere fact of Mr. Phillips' addiction amounts to ineffective assistance. It is the facial impossibility of Mr. Phillips' statement to the state court that he consulted with his client at the time he was hospitalized, and not the reason for that hospitalization, that is important here.

Recognizing that this finding does not end the inquiry, the court addressed

the second *Strickland* test:

> The final question is whether the state court acted
> unreasonably in determining otherwise. The state court
> rejected the ineffective assistance claim on two grounds. First,
> the court held that the trial court "thoroughly and completely
> admonished defendant as to the consequences of his guilty
> plea" and the "defendant's responses to the court's questions
> do not reveal any misunderstanding or hesitancy in his
> decision to plead guilty." *That observation by the court,
> however, is irrelevant to the issue presented here, which is
> whether the erroneous advice provided by counsel caused
> Moore to enter a plea he otherwise would not have entered,
> because it assumes that Moore was aware of the error in that
> advice at the time he entered the plea of guilty. If, as the
> record establishes, Moore was not aware that the sentence
> advice was erroneous, then his responses concerning the
> voluntariness of his plea and his acknowledgment of his rights
> do nothing to address the underlying problem. Nothing in that
> colloquy addressed whether his plea was based upon any
> predictions as to his sentence, nor did it otherwise alert Moore
> to the possibility that he was misinformed as to the choice he
> faced.* Because nothing in the plea colloquy addressed the
> length of sentence or the impact of good-time credits that he
> was likely to face if he went to trial and lost, that sequence of
> questions did nothing to ameliorate the adverse impact of his
> counsel's misinformation. *The state court's reliance on the
> plea colloquy as a panacea for Moore's attorney's deficient
> performance is without legal precedent where the colloquy did
> not even address the basis for that deficient performance, and
> thus is an unreasonable application of the Strickland test.*

*Id.* at 243 (emphasis added).

At this point, however, we cannot infer, as Petitioner would like us to do, that he

has proven his entitlement to the issuance of a writ. Indeed, whether ultimate relief is

available depends entirely upon what evidence will be established at the hearing in the district court.

**REVERSED and REMANDED FOR FURTHER PROCEEDINGS**.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge