NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 12, 2007
Decided December 20, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-2112

| | |
|---|---|
| BRIAN JACOBSON, | Appeal from the United States |
| *Petitioner-Appellant,* | District Court for the Western |
| | District of Wisconsin |
| *v.* | |
| | No. 06-C-0751-C |
| UNITED STATES OF AMERICA, | |
| *Respondent-Appellee.* | Barbara B. Crabb, |
| | *Chief Judge.* |

**O R D E R**

Brian Jacobson pleaded guilty to possessing a gun as a felon, *see* 18 U.S.C. § 922(g)(1), and is currently serving his 30-month prison sentence. Jacobson did not appeal; instead he moved to set aside the judgment under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel. Jacobson argued that counsel's performance was deficient in three respects: (1) he failed to interview potential witnesses, (2) he failed to request additional fingerprint and DNA testing of the gun, and (3) he incorrectly advised Jacobson about his potential sentence. But for these purported errors, Jacobson said, he would not have pleaded guilty. The district court denied the motion without an evidentiary hearing, and Jacobson appeals. We affirm.

## Background

On July 12, 2005, police officers in Madison, Wisconsin, received a complaint that gunshots were being fired out of a black car with flames painted on its sides. The caller informed the police that the car had parked on Berwyn Drive in Madison. Police officers located the car at 44 Berwyn Drive and discovered an unspent .45 cartridge on the passenger seat. They eventually connected the car to Jacobson's apartment, where they found him and a man named Yonnas Haile. Jacobson admitted to the police that he had been driving the car that night, but he disclaimed any knowledge of the gunshots and said he did not have a gun. A consensual search of the apartment, however, uncovered a .45-caliber Ruger pistol in a kitchen cabinet. Laboratory tests later confirmed that the unspent cartridge found on the passenger seat of the car had been in the chamber of the Ruger pistol. No latent fingerprints suitable for identification were found on the gun.

Jacobson was charged with a single count of violating § 922(g)(1). He retained attorney David Mandell for his defense. At his September 20 arraignment, Jacobson entered a plea of not guilty. By October 3, he had reached a plea agreement with the government. In exchange for Jacobson's plea and his continued acceptance of responsibility, the government promised to recommend the reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.

At the beginning of the plea hearing, the government raised the possibility that Jacobson might be subject to the Armed Career Criminal Act, *see* 18 U.S.C. § 924(e), which mandates a minimum sentence of 15 years' imprisonment for a defendant convicted under § 922(g)(1) who has accumulated three qualifying prior convictions. The prosecutor explained that she had discussed that possibility with attorney Mandell immediately prior to the hearing and that, although she doubted that § 924(e) would apply, she wanted Jacobson to be aware of the potential penalty. Accordingly, the district court informed Jacobson that he faced either a 15-year minimum sentence if § 924(e) applied, or a ten-year maximum sentence if it did not apply. Jacobson said that he understood. He also swore that no one had promised him anything other than what is stated in the plea agreement, or threatened him or forced him to plead guilty, or told him that he would receive a particular sentence. Following the government's factual proffer, Jacobson admitted that he had possessed the gun. The court accepted his plea as knowingly and voluntarily given.

The probation officer did not mention § 924(e) in the presentence investigation report. He calculated a total offense level of 12, which included a two-level reduction for acceptance of responsibility, and a criminal history category of V. The district court agreed with those calculations, which yielded an advisory range of 27 to 33 months' imprisonment. *See* U.S.S.G. Ch. 5 Pt. A. The court sentenced

Jacobson to 30 months' imprisonment, a $3,000 fine, and a $100 special assessment. Jacobson did not seek to withdraw his guilty plea at any point during the proceedings, and he did not appeal.

Almost one year after he was sentenced, Jacobson filed his § 2255 motion claiming that Mandell's performance had been deficient. Jacobson contended, as relevant here, that Mandell (1) neglected to interview Haile—the man who was in Jacobson's apartment on the night the gun was found—and Jacobson's girlfriend, Victoria Daniels; (2) neglected to seek further fingerprint and DNA testing of the gun; and (3) misadvised him that § 924(e) could apply if he went to trial.

The district court denied the motion without conducting an evidentiary hearing. The court reasoned that Jacobson could not show that Mandell had been deficient in declining to investigate potential witnesses or to pursue further forensic testing of the gun because Jacobson did not aver that he told his attorney that he did not know about the gun and did not possess it. The court reasoned further that Jacobson had not provided a compelling explanation for the inconsistency between the affidavit he submitted along with the motion—in which he claims he did not own or possess the gun—and his testimony at his plea hearing, where he admitted that he had possessed it. And the court concluded that Jacobson had not offered a persuasive reason to believe that, but for his counsel's sentencing advice, he would have gone to trial. Jacobson appeals.

**Analysis**

We review the denial of a motion under § 2255 for clear error in factual matters and de novo for issues of law. *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006). To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007). Because Jacobson pleaded guilty, he could meet the second prong only by establishing a reasonable probability that, but for counsel's error, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). "A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." *Julian*, 495 F.3d at 495.

Jacobson's first two arguments relate to Mandell's investigation of the facts of his case. He argues that Mandell's performance was deficient because (1) he did not interview Haile, the other man in Jacobson's apartment, and Daniels, Jacobson's girlfriend; and (2) he did not seek further fingerprint and DNA analysis of the gun. Jacobson submitted only his own affidavit to support these contentions.

In it he swears that the gun was not his, that he did not possess it, and that he "[could] only assume" that the gun belonged to Haile, who he says had been living with him for a month prior to the incident. He also avers that a fingerprint or DNA analysis of the gun "would have shown no evidence of contact by me."

To pursue these theories, Jacobson needed to articulate in a "sufficiently precise" manner "what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004). And ultimately he would need to establish that the expected results of further investigation "'would have led counsel to change his recommendation as to the plea.'" *Id.* (quoting *Hill*, 474 U.S. at 59).

The government contends that Jacobson cannot now say that he did not possess the gun because he has not provided a compelling explanation for his contrary testimony at his plea hearing, where he admitted that he possessed it. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). We understand Jacobson implicitly to say, though, that he made that admission—and thus perjured himself—because he considered it his best option in the face of a potential 15-year minimum sentence.

Nevertheless, Jacobson did not say enough to trigger further inquiry about attorney Mandell's decision not to interview Haile and Daniels, nor to seek fingerprint and DNA analysis of the gun. Although we find those decisions somewhat troubling, Jacobson gave the district court no reason to believe that Jacobson ever gave Mandell any information that would alert him to the need for those investigations. Specifically, Jacobson does not aver that he ever told Mandell that he did not possess the gun or that it belonged to someone else. And although he maintains that he gave Mandell contact information for Daniels, he does not say that he ever gave Mandell contact information for Haile—the person he now identifies as a prime suspect. Finally, Jacobson has not shown that talking to Haile or Daniels would have done anything more than confirm that Jacobson—as he admitted in court—possessed the gun. *See Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

Jacobson's other theory is that Mandell's performance was deficient because he overestimated Jacobson's potential sentence if he went to trial. In his affidavit, Jacobson avers that Mandell told him that if he went to trial the government might argue that § 924(e) applies, which would mean a mandatory-minimum sentence of 15 years:

> Attorney Mandell also told me that the government prosecutor had told him that a certain law [18 U.S.C. § 924(e)] applied in my case, and I could be facing a minimum of fifteen years up to a maximum of life in prison. Mandell said that if I went to trial, I ran the risk of a fifteen-year to life sentence.
>
> . . . Attorney Mandell later told me that the government's lawyer had offered a plea agreement if I pled guilty to being a felon in possession. It was my understanding that if I signed the agreement, the government would not seek the fifteen to life penalty. I was afraid that if I did not plead guilty, the government's lawyer would try to convince the judge that the law that would put me in prison for at least fifteen years should be followed in my case.

If this is what Mandell said, his advice was incorrect, and the government does not argue otherwise. The problem, though, is not that Mandell warned Jacobson about the possible application of § 924(e), especially if the prosecutor thought it might apply. Although the parties now agree that § 924(e) does not apply, their conclusion remains untested. Jacobson's criminal history includes, among other offenses, three prior convictions for felony bail-jumping, *see* Wis. Stat. § 946.49 (2007). We have yet to address whether felony bail-jumping counts as a crime of violence under § 924(e), but a probation officer for the Eastern District of Wisconsin indeed took that position in *United States v. Willis*, 325 F. Supp. 2d 908, 909 (E.D. Wis. 2004). Although Judge Adelman disagreed with that recommendation, *see id.* at 909-11, Mandell could very well have been acting in good faith by informing Jacobson about that potential argument.

But if Jacobson is telling the truth in his affidavit, then counsel went astray in suggesting that the application of § 924(e) is *negotiable*. It is not. It either applies or it doesn't apply, and the government plays no role in pursuing or foregoing the enhancement. *See* § 924(e)(1) ("a person who violates section 922(g) of this title and has three previous [qualifying] convictions . . . shall be . . . imprisoned not less than fifteen years[.]"). So if Mandell did tell Jacobson that he was more likely to face the enhancement if he went to trial, that advice would have been wrong.

Nonetheless, the district court was correct to conclude that Jacobson could not establish prejudice. In the context of a guilty plea, *Strickland*'s prejudice prong addresses whether an attorney's deficient advice was "the decisive factor in a defendant's decision to plead guilty." *Julian*, 495 F.3d at 498. A "mere allegation" that, but for the advice, the petitioner would not have pleaded guilty, will not do; there must be a reasonable probability that he would have gone to trial. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). And here the transcript of

the plea hearing belies any contention that Mandell's sentencing advice was the decisive factor in Jacobson's decision to plead guilty. Although there is a considerable margin of difference between a prediction that Jacobson conceivably could receive no less than 15 years' imprisonment after trial, *see* § 924(e), and the actual statutory maximum of 10 years' imprisonment, *see* § 924(a), any misstatement by Mandell was cured at the plea hearing, where both the government and the district court correctly explained the sentencing consequences that Jacobson faced. Indeed, the prosecutor explained that she did not think that § 924(e) would apply. If, as Jacobson now contends, he would not have pleaded guilty if he had known that § 924(e) would not apply, then he would have halted the proceedings at that moment. Instead he proceeded, and the court correctly informed him that if he pleaded guilty he would face a 15-year minimum sentence if § 924(e) did apply, and a 10-year maximum sentence if it did not apply. The court could have explicitly stated that those penalties would apply regardless whether he went to trial or pleaded guilty, but there was no reason to do so. Jacobson expressed no confusion about the potential penalties he faced; he said that he understood.

Most importantly, as in *Bethel*, 458 F.3d at 719, Jacobson testified at the plea hearing that he was not relying on a particular sentence in pleading guilty. He also swore that no one had made any promises other than those in the plea agreement and that no one had threatened him or forced him to plead guilty. Because he explicitly stated that he was not relying on a particular sentence, Jacobson misplaces his reliance on *Moore*, 348 F.3d at 243. Unlike the situation in that case, the district court here specifically addressed during the colloquy whether Jacobson's "plea was based upon any predictions as to his sentence," and the court clearly alerted Jacobson "to the possibility that he was misinformed as to the choice he faced." *See id.* at 243. Further, nothing else about the record even hints that counsel's discussion with Jacobson about § 924(e) was decisive. Jacobson had not maintained his innocence before pleading guilty—indeed, he signed the plea agreement less than two weeks after his arraignment. Nor did he attempt to withdraw his guilty plea after the probation officer said nothing at all about § 924(e) in the presentence report. Accordingly, Jacobson could not show that Mandell's sentencing advice—if deficient—prejudiced his decision to plead guilty.

AFFIRMED.