**Robert Jerry JACKSON, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 00–6769.

United States Court of Appeals, Sixth Circuit.

Dec. 20, 2001.

Before KENNEDY, MOORE and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

Petitioner Robert Jackson appeals an order of the District Court denying his motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, and correct his sentence for conspiring to defraud the federal government in violation of 18 U.S.C. § 371. After entering a plea of guilty to one count of violating Section 371, Jackson was sentenced to serve six months in prison and six months of home detention. Jackson contended in his § 2255 motion that he had received ineffective assistance of counsel when his lawyer failed to advise him of the availability of a statute of limitations defense. The § 2255 motion also alleged that counsel had failed to call Jackson and the attorney who had represented him during the time of the alleged violations to testify about the scope of Jackson's involvement in the conspiracy.[1] The District

---

1. Jackson does not appeal the District Court's finding concerning counsel's failure to call him as a witness.

Court found that neither of these decisions rose to the level of ineffective assistance of counsel required by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and denied the motion.

Jackson asserts on appeal that he withdrew from the conspiracy more than five years before the information against him was filed, and thus that the statute of limitations would have provided an affirmative defense. Because he was not advised of this possible defense prior to deciding to plead guilty and would not have pled guilty if so advised, Jackson asserts, he was denied his constitutional right to effective assistance of counsel.

We review the denial of a § 2255 motion *de novo* and review the District Court's factual findings for clear error. *Logan v. United States*, 208 F.3d 541, 543 (6th Cir. 2000). We find no clear error in the District Court's factual findings, and conclude that Jackson had not withdrawn from the conspiracy in time to make a statute of limitations defense viable.

## I. FACTS

Jackson owned Health Care Trust, Inc. ("HCT"), which provided management services, including accounting and the preparation of cost reports, to Regional Home Health Care Facility ("Regional"), Inc., a non-profit provider of in-home health services owned by Betty Sailors. HCT prepared cost reports to be submitted by Regional to the Medicare provider for the state of Tennessee and charged a management fee for each patient for whom a bill was submitted. Sailors was employed by HCT as a consultant at $100,000 per year, and failed to disclose her related party interest in Regional as required by Medicare regulations. Management fees for services provided to Regional were also increased beyond cost.

In July, 1991, Jackson wrote a letter to Sailors expressing concern about actions he understood Sailors and her husband to be considering that Jackson felt would violate Medicare regulations. Jackson suspended Sailors in his letter, and later refused an in-person request by Sailors and her husband to remain involved in HCT. App. at 102. Jackson claims that he also telephoned the authorities to report these irregularities. The Government points out that there is no record of such a call and that the investigation was launched in response to another tip from a former Jackson employee. Jackson also wrote a letter to a member of the Board of Regional, explaining his suspension of Sailors, and in particular, his concern that Regional's employment of Sailors's husband would make it impossible for Regional to claim reimbursement for HCT's management fee. The government argues that this letter did not disclose all of Sailors's questionable dealings, that it did not detail Jackson's own involvement in the conspiracy, and that it did not mention that management fees had been increased beyond cost. App. at 114.

In 1992, the federal government began its investigation in response to the complaint to Blue Cross Blue Shield of South Carolina from a former Jackson employee. Jackson cooperated with federal investigators over the next few years, responding to their questions and helping them work through documents, though there is some dispute about how forthcoming he was during his interviews. *Compare* Pet. Br. at 7–8 *and* Res. Br. at 17.

On October 30, 1996, the United States filed an Information against Mr. Jackson alleging that he conspired to defraud the United States in violation of 18 U.S.C. § 666(a)(1)(A), identifying his last overt act as part of a conspiracy with Sailors and

her husband as the filing of fraudulent Regional cost reports on or about November 5, 1991. Jackson did not file these reports, but, in the language of the Information, was "responsible for the[ir] filing ... well knowing that all costs listed on these reports were not reimbursable." App. at 165.

Represented at the time by James Omer, Jackson entered a guilty plea on November 13, 1996. Mr. Omer testified that he never thought of making a statute of limitations defense on Jackson's behalf, and therefore never advised his client as to that possibility.

## II. ANALYSIS

To challenge a guilty plea based on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To demonstrate "prejudice" where the claim is based on failure to advise concerning a possible defense, the petitioner needs to show a reasonable probability that he would have gone to trial and that an affirmative defense would likely have succeeded. *Id.* at 58.

Jackson asserts that he had an available statute-of-limitations defense, as to which he was never advised by his then-attorney, James Omer. A defendant has a complete defense to a conspiracy charge if he withdrew five years prior to the charges being sought, *United States v. Lash,* 937 F.2d 1077, 1083 (6th Cir.1991), but the burden of proving withdrawal falls on the defendant, *id.,* and requires a demonstration that the defendant took affirmative action to defeat or disavow the purpose of the

conspiracy. *Id.* Without affirmative action to disavow the conspiracy, liability continues for all actions in furtherance of the conspiracy by other conspirators. *Id.* "[A] full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals" would be evidence sufficient to show affirmative action. *United States v. Juodakis,* 834 F.2d 1099, 1102 (1st Cir. 1987). "Mere cessation of activity is not sufficient." *Lash,* 937 F.2d at 1083 (citation omitted).

Jackson argues on appeal that it was error for the district court to find that he would not have prevailed in a statute-of-limitations defense. He claims actual innocence, and argues that even if he participated in a conspiracy, he took "affirmative action" by cooperating with investigators and reporting Sailors to state authorities.

The District Court found that petitioner had failed to show "that he affirmatively withdrew from the conspiracy and that his prior counsel's failure to seek dismissal on these grounds fell below that standard of objective reasonableness and caused him prejudice." App. at 17. The Court found that "the evidence in this case conflicts as to whether Petitioner did in fact affirmatively withdraw from the conspiracy" and thus that it was "far from clear that he would have been acquitted if he had gone to trial and raised a statute of limitations defense because of the continuing activities of the co-conspirators." App. at 19. The District Court refused to credit the testimony of Jackson that he had contacted the Blue Cross Blue Shield to report problems in the cost reports submitted by Regional. Moreover, it found that Jackson "was not completely forthright" with investigators, that he did not disclose to Regional's Board that Sailors was a related party,

and that he did not inform the Board the he had increased management fees beyond cost. App. at 19–20. The District Court also found that Jackson and Sailors engaged in a "power struggle" over HCT after November 1, 1991, and that Sailors's letters and corporate minutes indicating that Jackson had quit and was no longer involved in HCT were not credible because they were manipulated to improve her position in litigation against Jackson.

Applying the clear-error standard to the District Court's factual determination that no phone call was made to the authorities before October 31, 1991, we do not find sufficient evidence to reject that finding. Similarly, we do not find clear error in the District Court's decision to refuse to credit Jackson's testimony (supported by testimony from his first attorney) that he had contacted authorities prior to November 5, 1991. The District Court was in the best position to assess the credibility of Jackson and his attorney.

Turning to the legal question of whether what Jackson did constituted "affirmative action" to disavow or defeat the purpose of the conspiracy, we find that Jackson did not take the steps necessary to make a statute of limitations defense viable. He made no "full confession" to authorities. Jackson's July letter to Sailors may seem to be a "communication" to a "co-conspirator" that he has abandoned the conspiracy per *Juodakis,* 834 F.2d at 1102. The Government argues that the letter is not sufficient to disavow the conspiracy because it fails to "disclose the illegal activity which had been committed and was continuing at that time." Br. at 16. Even if the letter were sufficient to disavow or disclose the conspiracy, after the date of this letter, and within five years of the filing of the Information, a cost report including the

inflated fees to HCT for which Jackson had provided the underlying documentation was submitted to Medicare. App. at 149.

Even if Jackson terminated his relationship with Sailors, the November 5, 1991, cost report was attributable to Jackson and gave rise to liability. In *United States v. Brown,* 147 F.3d 477 (6th Cir.1998), telemarketer made misrepresentations concerning the value of a bond. He left the scheme before the bond was sent via U.S. mail, but was nevertheless convicted of mail fraud. *Id.* at 488. The court found that Brown was jointly responsible for setting the scheme in motion. Similarly, Jackson set in motion the conspiracy responsible for submitting the November 5 cost report. HCT prepared accounting documents used to back up the report. To abandon the conspiracy, Jackson would have had to disavow false reports scheduled for submission after his withdrawal.

Moreover, Jackson's complaint to Regional's Board was that Sailors created a conflict of interest; not that she was a consultant of HCT in violation of the Medicare regulations. Similarly, his letter to Doug and Betty Sailors was not completely forthright. He claims in the letter that he had no knowledge of Sailors's involvement in related entities, an assertion the Government contends is false with considerable justification. Indeed, Jackson admitted at the evidentiary hearing in this proceeding that he knew when he wrote the letter that Sailors was beginning to operate Regional. App. at 112. Because the burden of proof rests with Jackson, we agree with the District Court that there was not sufficient evidence to conclude that he withdrew from the conspiracy in time to make a statute of limitations defense viable.

The judgment of the District Court is affirmed.