*496 OPINION OF THE COURT
Frank A. Gulotta, Jr., J.
The defendant, pro se, moves this court pursuant to CPL 440.10 to vacate judgment herein.
The defendant was convicted on November 1, 1991, after trial, of conspiracy in the second degree, four counts of criminal sale of a controlled substance in the first degree, five counts of criminal possession of a controlled substance in the first degree, and five counts of criminal possession of a controlled substance in the third degree.
On December 18, 1991, defendant was sentenced by Honorable Marie Santagata of this court to an aggregate term of imprisonment of 88V3 years to life broken down as follows: an indeterminate term of 15 years to life on two of the first degree criminal sale of a controlled substance counts and two of the first degree criminal possession of a controlled substance counts, an indeterminate term of 25 years to life on one of the two first degree criminal sale of a controlled substance counts and three of the first degree criminal possession of a controlled substance counts, and from SVs to 25 years for each of the third degree possession convictions. Some of these sentences were ordered to run consecutively.
Defendant appealed his conviction to the Appellate Division, Second Department. In his appellate brief, he claimed: (a) that the trial court incorrectly denied his motion to suppress evidence derived from the execution of the eavesdropping warrants; (b) that the trial court should have granted his motion to suppress physical evidence seized pursuant to the search warrant; (c) that the court should have run his sentence on the conspiracy counts concurrently with his sentence on the substantive counts; and (d) that his sentence was excessive.
In a decision and order dated December 14, 1998, the Appellate Division, Second Department, unanimously affirmed defendant’s judgment of conviction. (People v Ortiz, 256 AD2d 424.) On May 23, 2000, the New York State Court of Appeals denied defendant leave to appeal the decision of the Appellate Division. (People v Ortiz, 95 NY2d 801.)
In his current motion, defendant moves to vacate his judgment of conviction pursuant to CPL 440.10, arguing that he was denied effective assistance of counsel in that: (a) counsel failed to advise him of his rights under the Vienna Convention on Consular Relations (21 UST 77, TIAS No. 6820 [1963]), and (b) counsel failed to advise him of the reality of his sentence exposure during plea negotiations.
*497 Under New York law, the constitutional requirement of effective assistance of counsel is met when “the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation.” (People v Benevento, 91 NY2d 708, 712 [internal quotation marks omitted], quoting People v Baldi, 54 NY2d 136, 147.) Further, a defendant must overcome a strong presumption that his counsel rendered effective assistance. (See, People v Myers, 220 AD2d 461; People v Garcia, 75 NY2d 973, 974; People v Rivera, 71 NY2d 705.)
Indeed, a court will not view a counsel’s actions in a vacuum and, in fact, the reasonableness of a counsel’s actions may be determined or substantially influenced by defendant’s own statements or actions. (Strickland v Washington, 466 US 668, 669.) Finally, to demonstrate that his counsel was ineffective, a defendant is required to show that he did not receive a fair trial because counsel’s conduct was both “egregious and prejudicial.” (People v Benevento, 91 NY2d at 713, quoting People v Flores, 84 NY2d 184, 188.)
Under the standards set forth above, the defendant has clearly failed to show that his trial counsel’s representation was ineffective or that he was prejudiced in any way by such representation.
Defense counsel’s failure to advise his client of a right to consular notification under the Vienna Convention did not deprive defendant of meaningful representation. In fact, it is unclear whether the Vienna Convention confers any individually enforceable rights.
Article 36 of the Vienna Convention, which discussed the notification of a consulate upon the arrest of a foreign national, clearly does not create any fundamental rights or the right to counsel. (United States v Li, 206 F3d 56; Waldron v Immigration & Naturalization Serv., 17 F3d 511, 518.) Indeed, the Treaty’s preamble clearly states that the purpose of the privileges and immunities contained in the Treaty “is not to benefit individuals but to ensure the efficient performance of functions by consular posts.” (Preamble to Vienna Convention, 21 UST 77, 79.) Thus, at most, the Convention “arguably” confers on foreign nationals the right to consular assistance.
Further, even if this court were to find that the Vienna Convention confers upon defendant some enforceable right, defendant has not established any prejudice resulting from his failure to receive consular advice and assistance. All defendant *498 alleges is that he might have persuaded the Colombian Consulate to use its “vast” resources to assist his case. He in no way shows how the absence of the Consulate’s resources impacted negatively upon the verdict herein. He has offered no affidavits from the Colombian Consulate detailing how they might have assisted him, nor any evidence that the Colombian Consulate regularly provided assistance to arrested Colombian citizens. (United States v Rodrigues, 68 F Supp 2d 178.)
Further, this court finds that the vacatur of a defendant’s conviction for an alleged violation of the Vienna Convention is not warranted. Inasmuch as the right to consular assistance is not viewed as a fundamental right, courts have declined to either suppress evidence (United States v Lombera-Camorlinga, 206 F3d 882) or dismiss an indictment (United States v Li, 206 F3d at 62) for an alleged Vienna Convention violation. Indeed, to vacate defendant’s conviction on the speculative and unlikely assertion that the Colombian Consulate might have offered him its “political weight and resources” would be to grant this defendant greater rights than those available to United States citizens, a circumstance clearly not intended by the drafters of the Vienna Convention. (People v Litarov, 188 Misc 2d 234.)
Likewise, there is no merit to defendant’s claim that his trial counsel was ineffective for allegedly failing to apprise him of his sentence exposure following a conviction. Defense counsel’s performance during the plea negotiation process is subject to the same standard enunciated in Strickland v Washington (supra; see also Hill v Lockhart, 474 US 52).
Initially, defendant’s trial counsel advised him to accept the government’s plea offer which was substantially less than the defendant’s sentencing exposure after trial. Defendant rejected that advice. While defendant’s attorney did offer him a professional estimate of the probable sentence after trial, the 25 years to life cited by defendant, counsel did not tell defendant that his sentence exposure was limited to that estimate. Further, the Assistant Attorney General who prosecuted this case advised defendant to accept the plea offer because defendant faced a sentence similar to the 50 years to life received by his previously convicted predecessor in the alleged drug cartel. In addition, New York’s highest court held that a counsel’s estimate of a potential sentence in no way renders his assistance ineffective. (People v Modica, 64 NY2d 828.)
Moreover, defense counsel herein had a right to rely upon defendant’s own statements (see Strickland, supra). The defendant stated that he would not plead guilty to crimes he did not *499 commit (defendant’s motion, at 7); he denied his guilt under oath at trial and, after conviction, maintained his innocence at the sentencing stage. Defendant also stated he would not plead guilty because the government could not ensure the safety of his family. In his own words, defendant “would be willing to take the risk of trial to protect [his] family” (defendant’s motion, at 7). In spite of serious sentence exposure, defendant felt his only option was to not cooperate with the government. He believed that his family would be safe whether he was acquitted or convicted only if he did not cooperate with the government. Thus, inasmuch as the People’s plea oifer required cooperation, and because the People would require defendant to admit to crimes allegedly he did not commit, defendant would not accept any plea. In addition, defendant did not believe that anyone would testify against him at trial. Thus, regardless of defendant’s position that he did not comprehend his maximum sentence exposure, there was no reasonable probability that a more favorable plea bargain would have been struck, nor that even if such were possible, that defendant would have accepted such plea in light of his reported protestations of innocence. (People v Mack, 223 AD2d 383.)
In view of the foregoing, the defendant’s motion is denied in its entirety.