OPINION OF THE COURT
David Fkey, J.
The defendant was charged with one count of criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]), for possessing more than 500 milligrams of cocaine on June 5, 2000. On August 17, 2000, the People moved to reduce the charge to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), because the New York City Police Department (NYPD) laboratory report showed that the cocaine seized from the defendant weighed only 1.2 grains (approximately 77.8 milligrams) of cocaine. On February 21, 2001, the defendant pleaded guilty to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and was sentenced to time served and a $120 court surcharge. On April 25, 2001, a civil judgment was entered for the surcharge, and on January 29, 2002, the defendant satisfied the civil judgment.
The defendant, in a motion dated April 14, 2017, seeks an order vacating his judgment of conviction pursuant to CPL 440.10 (1) (h). In sum, the defendant—who is a lawful permanent resident (LPR) of the United States—claims his attorney at the time misinformed him that he did not have to worry about his 2001 plea, even though it rendered him automatically deport-able. The People oppose the defendant’s motion, stating that (1) his ineffective assistance of counsel claim is unsupported by an affidavit from trial counsel, and in any event he received effective assistance, and (2) even if his attorney was ineffective, the defendant suffered no prejudice because a prior conviction rendered it likely that he would be deported.
For the following reasons, defendant’s motion is granted to the extent that a hearing will be held to determine if his attorneys from 2000 to 2001 affirmatively misinformed him about the immigration consequences of his plea, and if but for that wrong advice he would have insisted on going to trial.
*1129 Factual Background[1]
Defendant was born in Trinidad and brought to the United States by his parents on a visa in 1986 when he was 10 years old. He has lived in the United States as an LPR since 1988. Between 1986 and 2015 he had only been to Trinidad on two occasions, and those times were between 1986 and 1991.
In 1994, the defendant received a youthful offender adjudication (CPL 720.35) for assault in the second degree (Penal Law § 120.05 [1]), and received a five-year probation sentence. The underlying event for that adjudication took place on September 28, 1993, when defendant was 17 years old. He also has a 1994 conviction for sexual misconduct (Penal Law § 130.20 [1]), a class A misdemeanor, for which he received a nine-month jail sentence and an order of protection; the underlying event for that conviction took place on December 12, 1994, when defendant was 18 years old. Finally, defendant also pleaded guilty on November 13, 1997, when he was 21 years old, to driving while under the influence of alcohol (Vehicle and Traffic Law § 1192 [1]), a traffic infraction.
On June 5, 2000, an NYPD detective arrested the defendant and recovered one tinfoil packet containing cocaine from the defendant. The detective alleged that the defendant possessed more than 500 milligrams of cocaine. The Legal Aid Society (LAS) was assigned to represent defendant at his arraignment on June 6, 2000, where he was charged with one count of criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]).
At defendant’s arraignment, the People requested $10,000 bail, but the arraigning judge released the defendant on his own recognizance, and the case was adjourned to August 17, 2000, for grand jury action. On August 17, 2000, the People moved to reduce the sole charge in the complaint to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), because the NYPD laboratory report showed that the cocaine seized from the defendant in fact weighed 1.2 grains (approximately 77.8 milligrams) of cocaine, or about 84% less cocaine than originally alleged in the felony complaint. The case was adjourned for defense counsel to file motions by September 14, 2000, and was put on the September 28, 2000 court calendar for the People’s response and the *1130 court’s decision. On September 28, 2000, the People filed their response and a voluntary disclosure form (VDF).
The People’s opposition to the defendant’s omnibus motion and their VDF, filed in 2000, set out no facts about how the detective discovered the tinfoil cocaine package. The VDF only states that “all of the relevant facts are contained in the complaint.” In their opposition to this 440 motion, the People now state that in 2000 the detective told the District Attorney’s Office that the detective observed the defendant stop his car in a “drug prone location” and have a conversation with another male. The defendant and the other male then entered a building; a short time later the defendant exited the building, entered his car, and then “move [d] his hands in the direction of the center console.” The detective watched the defendant drive away and then attempted to stop the defendant’s car (although there is no mention of whether the detective was in a marked police car or in an unmarked car, or used lights and/or sirens to accomplish this). When the defendant “finally pulled over,” the defendant stated only that he had visited his girlfriend in the building. The detective stated that he then recovered one tinfoil package containing cocaine from inside the vehicle’s center console. There is no allegation that the defendant made any movement towards the center console when he was pulled over by the detective.[2]
Defense counsel’s omnibus motion for a suppression hearing alleged that defendant was driving in a lawful manner and was pulled over by the detective, and the detective searched the defendant outside the car by pulling down the defendant’s pants and underwear, and found the tinfoil package on the defendant’s person.[3]
The People’s plea offer on September 28, 2000, was for the defendant to plead to the only count in the reduced complaint, and he would be sentenced to probation and a treatment program. That offer was declined, and the court adjourned the case to October 31, 2000, for a Mapp hearing, and referred any Sandoval issues to the trial court. On October 31, 2000, the *1131 People answered not ready, and made the same plea offer, which was again rejected. The case was adjourned to December 5, 2000, for the hearing. On December 5 the People answered ready, and the defense answered not ready. The case was again adjourned for a hearing on January 9, 2001. On January 9, 2001, the People answered not ready, with no explanation, and gave a new offer: for the defendant to plead to the charge in exchange for a conditional discharge and two days of community service, which was rejected by the defendant. The case was adjourned to February 21, 2001, for the hearing.
On February 21, 2001, after the People answered ready for trial, the defendant pleaded guilty to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and was sentenced to time served, and a $120 court surcharge. On April 25, 2001, a civil judgment was entered for the surcharge, and defendant satisfied the judgment when he subsequently paid that surcharge on January 29, 2002.
The submissions by both sides show that since at least 2004, the defendant has not been in trouble with the law.[4] In fact, it appears from the defendant’s papers that the defendant subsequently turned his life around, went to culinary school, and became a productive member of society: he secured steady employment in an assisted-living facility’s kitchen, has a second, part-time job with a major parcel delivery service, speaks at community meetings about drug and alcohol abuse, and joined a Masonic lodge where he is involved in community and charitable events.
In January 2016, the defendant took his elderly mother and his fiancée to visit his mother’s 90-year-old sister in St. Lucia. On January 26, 2016, when they flew back to the United States, the defendant was detained in the Miami airport by United States Immigration and Customs Enforcement (ICE) agents, and a deportation investigation was commenced. On or about November 22, 2016, the defendant was arrested at his house and has been incarcerated in an ICE detention center in Georgia ever since for pending deportation proceedings. According to his immigration attorney, it is his misdemeanor controlled substance conviction, and not his misdemeanor sexual misconduct conviction, that is the cause for his mandatory detention *1132 and deportation (8 USC §§ 1227 [a] [2] [B]; [a] [2] [A] [iii]; 1182 [c]; 1229b [a], [c] [6]).[5] The People claim he was already deport-able due to the 1994 misdemeanor sexual misconduct conviction.[6]
Defendant’s motion before this court raises three issues: (1) whether defense counsel affirmatively misadvised the defendant that the conviction would have no impact on his LPR status and encouraged him to plead guilty;[7] (2) whether counsel should have sought an immigration-safe plea; and (3) why counsel failed to bring a CPL 30.30 motion or conduct a Mapp hearing prior to taking a plea.
CPL 440.10 (1) (h) Review Standard
Nine years after the defendant pleaded guilty in this court, the United States Supreme Court held in Padilla v Kentucky[8] that defense attorneys had a Sixth Amendment duty to advise defendants about a criminal conviction’s immigration consequences. The Supreme Court further found that under Strickland v Washington,[9] an attorney who failed to advise his LPR client that a narcotics conviction could result in deportation abrogated the attorney’s duty to provide proper advice to his or her client.[10]
In 2014, the New York Court of Appeals in People v Baret[11] held that the Padilla Court announced a new federal constitutional procedure, and therefore it did not apply retroactively in state-court, post-conviction proceedings. Thus, in a case where the sentencing court and defense counsel did not advise defendant that his plea could have negative immigration consequences, there is no per se relief under CPL 440.10. In fact, the Baret Court specifically held that the defendant is not entitled to 440 relief or even a hearing where the only claim is that defense counsel failed to advise the defendant that a narcotics plea would result in negative immigration consequences.[12]
*1133 The Court of Appeals, in People v McDonald,[13] however, had previously distinguished cases where defense counsel failed to give any advice about how a conviction would affect an LPR defendant, from when defense counsel wrongly advises a defendant that a conviction would have no deportation effect. In a case where the defendant was told that a plea would have no effect—when in fact the law was clear that he would likely be deported—the McDonald Court held that a defendant would prevail on an ineffective assistance of counsel claim if the defendant satisfied the two prongs established by the United States Supreme Court in Strickland v Washington[14] and Hill v Lockhart:[15] (1) defense counsel’s performance was deficient, and (2) this prejudiced the defendant.
The McDonald Court went on to state that under the Strickland test, defense counsel misinforming a defendant about a plea’s immigration consequences per se “falls below an objective standard of reasonableness.”[16] Defendant’s only burden then remains to “show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.”[17]
Analysis
Defendant’s affidavit states, in substance, that from the outset of his case he was worried about the effect a conviction would have on his LPR status: he had previously applied for U.S. citizenship and was told by an immigration officer that because of his then prior convictions he had to stay out of trouble for five years. He claims that when he asked whether a narcotics conviction would affect his LPR status, his attorney told him, “Don’t worry about it.” Defendant also claims that he told his attorney that he was worried that a drug conviction could affect his commercial driver’s license, and his attorney again told him, “Don’t worry about it.” Finally, defendant claims that he told his attorney that on the date of his arrest he was pulled over by the police and pulled out of his car, and the police pulled down his pants and underwear on the side of the road, where presumably they discovered the one package of cocaine. Although a Mapp/Dunaway hearing was granted by *1134 the court, on the hearing date his assigned LAS attorney did not appear. Instead, another LAS attorney—who defendant had never met—showed up, told the court the defendant would plead guilty, and the defendant pleaded guilty. Defendant states that if he had known that a conviction would cause him to be automatically deported, he would have taken his chances and gone to trial. Instead, anytime he asked her about deportation, his LAS attorney answered him, “Don’t worry about it,” when the law was clear at the time that he should have been very worried about it (8 USC §§ 1227 [a] [2] [B]; [a] [2] [A] [iii]; 1182 [c]; 1229b [a], [c] [6]).
Defendant’s new counsel in her affirmation relays that she spoke to defendant’s prior LAS attorneys, and they do not remember the case. She reviewed LAS’s file for the defendant, and there were no helpful notations in the file. Moreover, defendant’s new counsel claims that “upon information and belief” (but without stating the basis for this information and belief), “it is the policy of The Legal Aid Society not to permit current or former attorneys to sign affirmations in support of motions alleging ineffective assistance of counsel claims against The Legal Aid Society.”[18] She also relates how she has since made multiple calls to speak to prior counsel, but those calls went unreturned.[19] In sum, she was unable to obtain an affidavit from either of defendant’s prior 2000-2001 attorneys.
In order to demonstrate that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial, defendant raises three areas of malfeasance: (1) defense counsel affirmatively misadvised the defendant that the conviction would have no impact on his LPR status and encouraged him to plead guilty; (2) counsel should have sought an immigration-safe plea; and (3) counsel failed to bring a CPL 30.30 motion or conduct a Mapp hearing prior to taking a plea.
Defendant’s Motion is Granted to the Extent That a Hearing Shall be Held on Whether Counsel Misadvised Defendant
This court has reviewed the court file, and the defendant’s argument about a CPL 30.30 motion holds no weight. The People were within the statutory time, and defense counsel cannot be deemed ineffective for failing to make a meritless motion. (People v Meslin, 201 AD2d 744 [2d Dept 1994].) More *1135 over, defendant had no right to an “immigration-safe plea.” The information only contained one count: criminal possession of a controlled substance in the seventh degree. Without the District Attorney’s consent, the trial courts are without authority to offer a defendant a plea to a reduced charge (CPL 170.60; Matter of People v Christensen, 77 AD3d 174 [2d Dept 2010]).
In McDonald, the Court of Appeals denied that defendant’s request for a hearing solely because he made no allegations that but for counsel’s misadvice he would not have pleaded guilty. Here, however, defendant has met the McDonald standard; he has made that allegation. The People’s claim that defendant cannot show prejudice—because (1) his 1994 conviction already made him deportable, and (2) he did not attach affidavits from his LAS attorneys—is unpersuasive. First, the People acknowledge that defendant’s status changed from dis-cretionarily deportable to mandatorily deportable, because he could receive a waiver for the 1994 conviction, but not for the 2001 conviction.[20] Second, the defendant’s new counsel attempted to get affidavits from the defendant’s prior LAS attorneys, and those attempts were rebuffed.[21] McDonald makes it clear that the prejudice to be explored is whether “there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.”[22] Defendant’s submissions meet this standard insofar as it entitles him to a hearing on the issue. (People v Sanchez, 150 AD3d 589 [1st Dept 2017]; People v Picca, 97 AD3d 170 [2d Dept 2012].)
In sum, a hearing will be held to determine prior counsels’ effectiveness. That hearing shall be limited to the following issues: whether defense counsel affirmatively misadvised the defendant, and but for that advice, defendant would have sought to go to trial. The defendant may also explore why defense counsel did not pursue a Mapp hearing, and whether defense counsel attempted to negotiate anything other than to a plea that would not have made defendant mandatorily deportable, to the extent that it is probative to whether his attorneys understood the deportation and consequences and were ineffective.

. These facts are culled from defendant’s submissions, the court file, and the People’s opposition papers.

. These facts attributed to the detective do not appear in the court file. They are alleged in the People’s response affirmation, without any police reports or an affidavit from the detective attached.

. (Affirmation in support of omnibus motion, dated Sept. 15, 2000, at unnumbered page ¶¶ 17-18.) Defendant stated that when he first met his attorney, he told her that the officers who arrested him pulled him over while he was driving, pulled him out of his car, and pulled his pants and underwear down. (Defendant’s aff, dated Apr. 12, 2017, at 9 ¶ 26.)

. The People allege that defendant has three misdemeanor DWI convictions from 2001 to 2004, without any more detail, and did not attach any proof to their opposition papers. In any event, these convictions are not germane to the issues before this court.

. Affirmation of Mary Lynn Seery, Esq., dated Apr. 10, 2017.

. People’s affirmation, dated May 16, 2017, at 14-15.

. Aff of Cyril George, dated Apr. 12, 2017, at 10 ¶¶ 29-30.

. 559 US 356 (2010).

. 466 US 668 (1984).

. 559 US at 368-369.

. 23 NY3d 777 (2014).

. 23 NY3d at 800.

. 1 NY3d 109 (2003).

. 466 US 668 (1984).

. 474 US 52 (1985).

. McDonald, 1 NY3d at 115, citing United States v Couto, 311 F3d 179, 188 (2d Cir 2002).

. McDonald, 1 NY3d at 115, quoting Hill, 474 US at 59.

. Defense counsel’s affirmation, dated Apr. 14, 2017, at 15 n 8.

. Defense counsel’s reply affirmation, dated May 31, 2017, at 1 ¶ 2.

. People’s affirmation at 14-15; see also defense counsel’s reply affirmation at 3 ¶ 5.

. Affirmation of Hannah E. Robbins, Esq., dated Apr. 14, 2017, at 15-16 ¶¶ 32-33

. McDonald, 1 NY3d at 115.