**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3074-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALTON BRYANT,

    Defendant-Appellant.

_____

Submitted May 4, 2021 – Decided May 18, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 84-06-2028.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Hannah F. Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from an order entered by the Law Division on January 28, 2020, which denied his petition for post-conviction relief (PCR). We affirm.

I.

On October 1, 1983, between the hours of 6:45 a.m. and 7:15 a.m., the Newark Police Department dispatched officers to respond to reports of four armed robberies in the vicinity of United Hospital. One of the officers was located at the intersection of 11th Avenue and Littleton Avenue when he observed a group of young males who matched the description of the robbery suspects.

The officers pursued the suspects to a residential building on South 6th Street and secured the building by stationing officers at each of the exits. The officers then requested additional police support to conduct a search of the building. They also asked other officers to transport the alleged robbery victims to the South 6th Street location for possible identification of the suspects.

During the search of the building, M.B. granted the officers access to her residence on the second floor.[1] M.B. told the officers two of the individuals they were looking for were hiding in her son G.B.'s bedroom. When the officers entered the bedroom, they found defendant and R.B. lying fully clothed on the

---

[1] We use initials to protect the privacy of individuals involved in this matter.

A-3074-19

bed but acting as though they were asleep. The officers noted that both defendant and R.B. appeared to be perspiring.

The officers brought the suspects outside and as they were being placed in a police vehicle, one of the victims pointed to defendant and screamed "that's the one with the gun." M.B. consented to a search of the apartment and officers found a yellow windbreaker that defendant allegedly wore during the robberies, and a black .22 caliber revolver loaded with what was determined to be four hollow nose or "dum-dum" bullets. Later, another victim identified the revolver as the handgun that was pointed at him during the robbery.

The Family Part waived jurisdiction of the matter, and in June 1984, an Essex County grand jury returned an indictment charging defendant with first-degree robbery, N.J.S.A. 2C:15-1 (count one); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); fourth-degree unlawful possession of dum-dum bullets, N.J.S.A. 2C:39-3(g) (count three); first-degree robbery, N.J.S.A. 2C:15-1 (count four); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five).

On January 21, 1985, defendant pled guilty to count four of the indictment, and the State agreed to dismiss the other charges. Thereafter, the court sentenced defendant to twelve years in State prison, with four years of

parole ineligibility, and entered a judgment of conviction (JOC) dated February 22, 1985. Defendant did not appeal from the JOC.

On December 18, 2018, defendant filed a pro se petition for PCR. He sought to withdraw his plea and claimed that his trial attorney was ineffective because he failed to investigate his claimed alibi. Defendant asserted he was at G.B.'s residence on the night of the robberies, and he remained there until the following morning, when the police arrived and arrested him.

Defendant alleged that his trial counsel "continuously tried to convince [him] to accept a plea bargain, regardless of his alibi and his desire to take the case to trial." He also claimed his trial attorney misled him about the amount of time he would spend in jail if he pled guilty. He asserted that because he was "young and afraid . . . [he] felt like he did not have any other choice but to do what counsel told him to, namely, to accept the plea agreement even though he [was] innocent."

With his petition, defendant submitted two investigation reports. One report indicated that on November 15, 2019, investigator F.S. spoke with G.B., who reportedly said that "on the night of the incident," he was at his home with defendant and other friends. He asserted that they remained at his home until the following morning when the police officers "raided the house" and arrested

4

defendant and other persons. G.B. stated that his mother had attempted to explain to the officers that "they had the wrong people and that [G.B.] and his friends were at the house and had spent the night." G.B. signed the report and certified that the statements the investigator attributed to him were true.

In the other report, F.S. stated that she had interviewed J.C. According to F.S., J.C. disclosed that he had committed "a robbery with other people." After doing so, J.C. and the other perpetrators tried to run into "an unknown house." J.C. said some of them made it into the house and some did not. He stated that he and three other persons were apprehended before they entered the house, and that defendant was not with him when "the robbery" occurred. J.C. signed the report, certifying that the statements the investigator attributed to him were true.

The PCR court assigned counsel to represent defendant, and counsel filed a brief in support of the petition.[2] In his brief, counsel argued: (1) defendant is entitled to withdraw his plea; (2) defendant was denied his constitutional right to present an alibi defense; (3) defendant was denied the effective assistance of trial counsel; (4) an evidentiary hearing is required on the petition; and (5)

---

[2] Counsel noted that the Public Defender's Office had advised him that no transcripts were available because the case was more than twenty years old, and the records had been destroyed. The record on appeal includes the indictment, the plea agreement form, the JOC, the PCR petition, the investigation reports, the briefs submitted to the PCR court, and the transcript of the oral argument.

A-3074-19

defendant's petition is not subject to any procedural bar. The State argued that the petition was barred by Rule 3:22-12(a)(1), defendant failed to establish a prima facie claim of ineffective assistance of counsel; and defendant was not entitled to an evidentiary hearing.

On December 17, 2019, Judge Mayra V. Tarantino heard oral argument on the petition and reserved decision. On January 28, 2020, the judge filed a written opinion and order denying PCR. The judge found that the petition was barred by Rule 3:22-12(a)(1); defendant failed to establish a prima facie case for PCR; and an evidentiary hearing was not required. This appeal followed.

## II.

On appeal, defendant argues that he presented a prima facie case of ineffective assistance of counsel. He asserts there are genuine issues of material fact in dispute, and the PCR court erred by failing to conduct an evidentiary hearing on his petition. We disagree.

As Judge Tarantino noted in her opinion, an evidentiary hearing is required on a PCR petition only when the defendant establishes a prima facie case for PCR, there are material issues of fact in dispute that cannot be resolved based on the existing record, and the court determines a hearing is necessary.

A-3074-19

State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). The judge correctly found an evidentiary hearing was not required.

Here, defendant alleged he was denied the effective assistance of counsel with regard to his plea. He claimed his attorney had not properly investigated his alibi defense but instead convinced him to plead guilty even though he was innocent. He also claimed his attorney erroneously advised him regarding the plea and that he would be released to a halfway house in one or two years after he pled guilty.

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-part test established by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under that test, a defendant "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. The defendant must establish that the attorney's performance "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

The defendant also must show "that the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, "[t]he defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid.

Furthermore, the Strickland test applies to challenges to guilty pleas based on alleged ineffective assistance of counsel. State v. DiFrisco, 137 N.J. 434, 456-57 (1994) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). To set aside a guilty plea on this basis, the defendant first must show that counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases." Id. at 457 (quoting Tollett v. Henderson, 411 U.S. 258, 266 (1973)). The defendant also must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." Ibid. (quoting Hill, 474 U.S. at 59).

In this case, the judge found that defendant failed to present sufficient evidence to show that his trial attorney did not adequately investigate his alibi defense. As stated previously, defendant submitted certifications from two friends, which he asserted supported his claim that he was at G.B.'s residence when the robberies were committed.

8

The judge noted that defendant had waited thirty-four years to raise this claim of ineffective assistance of counsel. The judge stated that the delay rendered the claim suspect and also made it virtually impossible to determine if the claim had any merit. The judge noted that defendant had not provided notice of his claims of ineffective assistance to his attorney, and it appeared that "no one knows" where defendant's counsel could be found.

The judge also observed that defendant had submitted certifications from G.B. and J.S., who were defendant's friends. The judge noted that neither G.B. nor J.S. would know what discussions, if any, defendant had with his attorney regarding the claimed alibi.

Moreover, there was strong evidence which cast doubt on the claimed alibi defense. The judge noted that one of the robbery victims had identified defendant as the person who held the gun. Furthermore, another victim had identified the gun found in G.B.'s residence as the same handgun that was used during the robbery.

The judge also found that the record did not support defendant's claim that his attorney was ineffective in advising him regarding the plea. The judge noted that defendant had not furnished a copy of the transcript of the plea hearing. However, on the plea form, defendant indicated that he knew he was waiving

his right to a jury trial, and that no one had threatened him to plead guilty. On the form, defendant also acknowledged that he had time to discuss the plea with his attorney, and that he was satisfied with his attorney's services.

The judge further found that the record did not support defendant's claim that his attorney misled him regarding the penal consequences of his plea. The judge pointed out that the plea form indicated defendant was going to plead guilty to all counts in the indictment; however, the form stated that all counts other than count four would be dismissed. In addition, the JOC stated that defendant had pled guilty only to count four.

The judge also noted that defendant had alleged his attorney had erroneously advised him that, with appropriate credits, he should be released to a halfway house in about a year or two. However, the record shows that defendant was sentenced to a twelve-year prison term, with four years of parole ineligibility, and there is nothing in the record to substantiate defendant's claim that he would be released to a halfway house in a year or two.

There is sufficient evidence in the record to support the PCR court's findings. The record supports the PCR court's determination that defendant failed to show his attorney's representation of defendant was not "within the

range of competence demanded of attorneys in criminal cases." DiFrisco, 137 N.J. at 457 (quoting Tollett, 411 U.S. at 266).

The record also supports the PCR court's determination that defendant was not prejudiced by the alleged errors on the part of his trial attorney. In her decision, the judge noted that if the case had gone to trial and defendant had been convicted on one of the two first-degree robbery charges, he could have been sentenced to a term of twenty years in jail.

The judge aptly observed that defendant had received the benefit of a favorable plea agreement, which resulted in the dismissal of four of the five counts of the indictment. The judge found defendant "failed to demonstrate that he would not have pleaded guilty and would have insisted on going to trial."

Therefore, the PCR court correctly determined that defendant failed to establish a prima facie case for PCR, and defendant's claims could be resolved based on the existing record. The judge correctly concluded that defendant was not entitled to an evidentiary hearing.

## III.

Defendant argues that the PCR court erred by finding that his petition was barred under Rule 3:22-12(a)(1). He asserts that the procedural bar should be relaxed in the interest of justice. Again, we disagree.

A-3074-19

Rule 3:22-12(a)(1) provides that a defendant's first petition for PCR shall be filed no more than five years after the date the JOC was entered. The rule further provides that the procedural bar may be relaxed if the defendant "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." Ibid.

When a defendant's first PCR petition is filed more than five years after the entry of the JOC, the defendant must "submit competent evidence to satisfy the standards for relaxing the rule's time restrictions pursuant to Rule 3:22-12. Unless the defendant submits such evidence, the court does not have the authority to review the merits of the claim." State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018), certif. denied, 236 N.J. 374 (2019).

Here, defendant argues that the procedural bar should be relaxed because his trial attorney and the trial court did not advise him of his right to file a petition for PCR or inform him of time in which such a petition must be filed. The PCR court rejected this claim, noting that in 1997, defendant was found guilty of murder and other charges and sentenced to life imprisonment with thirty-five years of parole ineligibility. Defendant's conviction was affirmed on

12

direct appeal.  State v. Bryant, No. A-5662-97 (App. Div. Oct. 20, 1999), certif. denied, State v. Bryant, 163 N.J. 74 (2000).

In March 2000, defendant filed his first PCR petition in that case.  The PCR court denied the petition, and the court's order had been affirmed on appeal. State v. Bryant, No. A-4448-03 (App. Div. Jan. 24, 2006).  In addition, in May 2006, defendant filed a second PCR petition and argued, among other contentions, that his claims were not barred by Rule 3:22.  The PCR court denied the petition and the court's order was affirmed on appeal.  State v. Bryant, No. A-4741-06 (App. Div. Oct. 9, 2008).

Judge Tarantino therefore concluded that at least as of March 2000, if not the earlier, defendant "was keenly aware of the time limitations for filing petitions for PCR."  The judge stated that "[d]efendant, nevertheless, waited until December 18, 2018 to submit his PCR petition in this matter," which was nineteen years after "he knew of that right."

The judge found that defendant's explanation for the late filing was "unsubstantiated."  The judge further found the State would be "significantly prejudiced" if it were now forced to litigate issues related to the crimes that occurred in 1983.

We are convinced the record supports the PCR court's determination that defendant failed to establish excusable neglect for his failure to file a PCR petition within the time prescribed by Rule 3:22-12(a)(1). The record also supports the PCR court's determination that enforcement of the procedural bar would not result in a fundamental injustice. Defendant's arguments on this issue lack sufficient merit to warrant further comment. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3074-19