# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
         Plaintiff, )
)
v. )   ID Nos. 1703004263 and 1703015343
)
)
)
BRANDON BROWN, )
)
        Defendant. )

Submitted: January 13, 2020
Decided: July 31, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Kelly H. Sheridan, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Brandon Brown, Howard R. Young Correctional Institution, Wilmington, Delaware, *pro se*.

SALOMONE, Commissioner

This 31st day of July 2020, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1.  In January, February and March of 2017, there were a series of thefts and burglaries in a number of convenience stores and gas stations in New Castle County, Delaware. On April 12, 2017, Brandon Brown ("Petitioner" or "Defendant") was arrested in connection with these crimes.

2.  On August 7, 2017, a grand jury returned two separate indictments against Petitioner charging him and his co-conspirators with over 25 felony offenses stemming from the aforementioned crime spree, including multiple counts of burglary, aggravated menacing, theft, shoplifting and related charges.[1]

3.  On February 27, 2018, Petitioner pleaded guilty to six charges: (i) one count of Aggravated Menacing, (ii) one count of Robbery Second Degree, (iii) two counts of Burglary Second Degree, (iv) one count of Conspiracy Second Degree, and (v) one count of Wearing a Disguise During the Commission of a Felony.[2]

---

[1] Indictment, *State v. Brandon Brown*, ID No. 1703004263 (Del. Super. Ct. Aug. 7, 2017) (D.I. 2); Indictment, *State v. Brandon Brown*, ID No. 1703015343 (Del. Super. Ct. Aug. 7, 2017) (D.I. 2). Although there are multiple Uniform Case Numbers assigned to the matter, for the sake of simplicity, all citations are to the docket entries made in Case Number 1703004263.

[2] Pleas Agreement and TIS Guilty Plea Form, *State v. Brandon Brown*, ID Nos. 1703004263, et. al. (Del. Super. Ct. Aug. 7, 2017) (D.I. 22).

1

4.     Thereafter, the State filed a motion to declare Petitioner a habitual offender pursuant to 11 *Del. C.* §4214(c). On June 29, 2018, the Court granted the State's application and sentenced Petitioner to an aggregate of 25 years of Level V incarceration, suspended after serving 12 years with decreasing levels of monitoring to follow.[3]

5.     On December 31, 2018, Petitioner filed a *pro se* Motion for Modification of Sentence, which was denied by this Court on March 12, 2019.[4]

6.     Petitioner did not file a direct appeal of his conviction or sentence.

## RULE 61 MOTION

7.     On May 3, 2019, Petitioner filed a *pro se* Motion for Postconviction Relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61"), seeking to withdraw his guilty plea and raising claims of ineffective assistance of counsel.[5] Those claims can be fairly summarized as follows:

(1)     Defense counsel failed to "investigate the facts surrounding the Robbery Second and Aggravated Menacing" charges;

---

[3] D.I. 26 and 27; Sentencing Order, *State v. Brandon Brown*, ID Nos. 1703004263 et. al. (Del. Super. Ct. June 29, 2018) (D.I. 29).

[4] D.I. 30 and 31.

[5] Petitioner also filed a Motion for Appointment of Counsel on May 3, 2019, which was denied by the Court on May 16, 2019. (D.I. 36)

(2)     Defense counsel was further deficient by failing to develop a defense to the aforementioned charges; and

(3)     Due to these alleged deficiencies by defense counsel, Petitioner's plea was not entered knowingly and intelligently.  That is, but for these alleged deficiencies, Petitioner would not have entered a guilty plea.[6]

8.     On May 16, 2019, the Court ordered that the record be expanded and directed Petitioner's prior defense counsel, Eugene J. Maurer, Esquire, to respond to Petitioner's ineffective assistance of counsel claims.[7]

9.     On August 29, 2019, defense counsel filed an Affidavit in Response to Petitioner's claims of ineffective assistance of counsel denying those claims.

10.     On November 25, 2019, the State filed its Response to Petitioner's Motion for Postconviction Relief.

11.     After briefing was completed, this Motion was referred to the undersigned Commissioner to assist in the resolution of the matter.

---

[6] Def.'s Rule 61 Mot., at 3; Def.'s Rule 61 Mem., at 2-7.

[7] D.I. 36.  In June 2019, Petitioner sought reconsideration (i.e. Reargument) of the Court's Order Denying Appointment of Counsel. (D.I. 37).  On July 18, 2019, the Court denied Petitioner's *pro se* Motion for Reargument of his Motion for Appointment of Counsel as it was untimely.  (D.I. 38).  Thereafter, on August 7, 2019, the Court filed an Amended Order to Expand the Record and Denying Appointment of Counsel. (D.I. 41.).

## LEGAL ANALYSIS OF CLAIMS

12.    Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the Rule 61 Motion.[8] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[9] However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[10]

13.    This is Petitioner's first motion for post-conviction relief and it was timely filed.[11] No procedural bars prevent the Court from reviewing this Rule 61 Motion on the merits.

14.    In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard set forth in *Strickland v.*

---

[8] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[9] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

[10] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[11] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (If the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).

*Washington*.[12] This test requires the petitioner to show: (a) counsel's deficient performance, *i.e.*, that his attorney's performance fell below "an objective standard of reasonableness,"[13] and (b) prejudice.[14]

15.   Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[15] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[16]

16.   Under the second prong, in order to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[17] In other words, not every error that conceivably could have influenced the outcome

---

[12] *Strickland v. Washington*, 466 U.S. 668 (1984).

[13] *Id.* at 688.

[14] *Id.* at 694.

[15] *Id.* at 689.

[16] *Id.* at 690.

[17] *Id.* at 694.

undermines the reliability of the result of the proceeding.[18] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[19] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[20]

17.     In the context of a plea challenge, it is not sufficient for the defendant to claim simply that his counsel was deficient.  The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[21]

18.     "Where the alleged error of counsel is a failure to investigate, a determination of 'prejudice' to Defendant by causing him to pled guilty depends upon the likelihood that the additional effort by counsel would have led to a change in counsel's recommendation as to that plea."[22]

---

[18] *Id.* at 693.

[19] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).

[20] *Cooke v. State,* 977 A.2d 803, 840 (Del. 2009)(quoting *Strickland,* 466 U.S. at 686).

[21] *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984); *Hickman v. State,* 1994 WL 590495 (Del.) (applying *Strickland* to guilty pleas).

[22] *Albury* v. State, 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985)).

6

19. The burden of proving ineffective assistance of counsel is on the defendant.[23] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[24]

**The Ineffective Assistance of Counsel Claims Are Without Merit**

20. The Court finds each of Petitioner's ineffective assistance of counsel claims to be without merit as they fail to meet the first prong of the *Strickland* test.

21. Petitioner was indicted for more than 25 felonies and was also facing the possibility of additional unindicted felonies at the time defense counsel entered his appearance.[25] Many of the alleged offenses were caught on surveillance tape which clearly showed Petitioner as the perpetrator.[26] According to defense counsel, the State's evidence in addition to the surveillance tapes was "fairly overwhelming."[27] Based on the weight of evidence against the Defendant, defense counsel concluded that from a strategic point of view "this was not a situation where the defendant could have gone to trial and expected to prevail on some or any of the cases."[28]

---

[23] *Oliver v. State*, 2001 WL 1751246 (Del.).

[24] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[25] Maurer Aff. 2.

[26] *Id.*

[27] *Id.*

[28] *Id.*

Moreover, Petitioner was eligible to be sentenced as a habitual offender thereby making his situation even more precarious.[29]

22. Defense counsel also learned that the pretrial and pre-Indictment negotiations among the State and the Public Defender's Office (which occurred prior to Mr. Maurer making his appearance) resulted in a plea offer to Defendant of 25 years of unsuspended Level V incarceration.[30]

23. In connection with counsel's defense of the Petitioner, Mr. Maurer reviewed all of the separate charges that were pending against the Petitioner and the evidence in support of those charges.[31] This evidence included police reports, surveillance footage, witness statements and law enforcement identifications. In order to facilitate his discussions with the Defendant, defense counsel prepared a chart demonstrating his understanding of the evidence against the Petitioner.[32] Of particular concern to defense counsel was the unindicted charge of Robbery in the Second Degree arising out of an incident which occurred on February 5, 2017 which had the potential to be indicted as Robbery in the First Degree because the Defendant had caused physical injury to the victim of the incident.[33] Defense counsel further

---

[29] *Id.*

[30] *Id.* at 3.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 7.

8

explained to the Petitioner that the elevated charge increased Petitioner's potential imprisonment exposure to 25 years to life on that felony charge alone.[34]

24.     After a thorough review of the State's evidence, counsel concluded that the most prudent defense strategy was to attempt to mitigate the overwhelming amount of evidence against the Petitioner in order to negotiate a better plea offer with the State Prosecutor's office.[35] Such a strategy was "objectively reasonable" under the circumstances given the significant number of indicted felony charges Petitioner was facing, the potential for the indictment of a charge of Robbery in the First Degree, and the strength of the State's evidence.

25.     "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[36]

---

[34] *Id.*

[35] *Id.* at 4.

[36] *Ploof v. State*, 75 A.3d 840, 852 (Del. Supr. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

9

26. Here, further investigation into the facts surrounding the Second Degree Robbery and Aggravated Menacing charges would not have resulted in a change in counsel's defense strategy or his recommendation to Petitioner to take a plea offer.

27. While defense counsel did not personally interview the victim in either case, he had reviewed the police reports and other evidence that showed that the Defendant was the *actual perpetrator* of both the charges of Second Degree Robbery (which occurred on February 7, 2017) and Aggravated Menacing (which occurred on January 14, 2017).[37] If counsel had interviewed either or both lay witnesses to these two crimes, it was highly unlikely that the results of those interviews would have convinced counsel to abandon his plea negotiation strategy and risk exposing his client to trial (and the potential for even greater jail time) in light of the weight and the totality of the evidence against Petitioner with respect to these two crimes as well as the 20 or so other felonies with which Petitioner was charged. Given such dire straits, a more thorough examination of those two charges would not have resulted in a change in counsel's recommendation to Petitioner.

28. Moreover, by all accounts, counsel's defense strategy and assistance was effective. Based on his review of the evidence and his interactions with the Petitioner, defense counsel determined that a mental health evaluation would be

---

[37] Maurer Aff. at 9-11.

10

advisable and procured a psychiatric evaluation of the Petitioner, which was provided to the State.[38] Counsel believed that "a mental health evaluation would be advisable for purposes not only of determining the defendant's competency but that such an evaluation might also be helpful in negotiating with the Prosecutor's Office in an effort to lower the amount of jail time that was being sought."[39] As a result of the foregoing, as well as his communications with the State Prosecutor, defense counsel was successful in convincing the State not to move forward with the more serious charge of Robbery in the First Degree and securing a more favorable plea offer than the one previously made by the State.[40] Likewise, defense counsel was successful in reducing the State's sentencing recommendation.[41]

29. The Court ultimately imposed a sentence of 12 years of Level V, which is a substantially better result than the potential life imprisonment (with a minimum mandatory jail terms of 25 years) that Petitioner could have faced had he proceeded to trial and been unsuccessful.

30. Based on the foregoing, the Court finds that counsel's performance was objectively reasonable under the circumstances and, as such, Petitioner fails to

---

[38] Maurer Aff. at 4-5, 13.

[39] Maurer Aff. at 4.

[40] Maurer Aff. at 6.

[41] *Id.*

establish the first prong of the *Strickland* test. Having so concluded, the Court need not examine the second prong under *Strickland* of actual prejudice.

31. The Court also finds that the Petitioner entered his plea knowingly and intelligently. Petitioner represented to the Court at the time of his colloquy that he was, in fact, guilty of the crimes to which he was pleading.[42] In addition, the Court confirmed with the Petitioner that (i) counsel had fully reviewed the plea documents with him and answered any questions he had, and (ii) Petitioner was satisfied with the representation afforded to him by defense counsel.[43]

32. "[A] Defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[44]

33. Moreover, Petitioner's acceptance of the plea represents a rational decision by him to avoid a trial where the downside could have resulted in a significantly greater prison sentence if convicted. Petitioner was obtaining a benefit by entering into the plea in that the remaining charges were *nolle prossed* and the prosecution agreed to cap its recommendation of unsuspended Level V time to eighteen (18) years.[45] Indeed, in light of the facts and circumstances of this case, it was unlikely Petitioner

---

[42] Plea Hearing Tr. 14.

[43] Plea Hearing Tr. 17-18.

[44] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[45] Plea Hearing Tr. 4.

would have prevailed at trial and the plea was his best option. Accordingly, the Court finds that Defendant has failed to meet the *Strickland* test with respect to his claims of a coerced plea.

34. In conclusion, Petitioner's plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing. Petitioner entered into his plea knowingly, intelligently and voluntarily. The Court finds that counsel was not deficient in any respect in his representation of Petitioner. Petitioner's ineffective assistance of counsel claims are without merit.

For all of the foregoing reasons, Petitioner's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

The Honorable Janine M. Salomone

cc: Prothonotary
Kelly H. Sheridan, Esquire
Eugene J. Maurer, Esquire
Mr. Brandon Brown, *pro se*

13