| STATE OF LOUISIANA | * | NO. 2024-K-0164 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CASEY LEJEUNE | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 536-045, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

**J. JENKINS DISSENTS**

Jason R. Williams, DISTRICT ATTORNEY, PARISH OF ORLEANS
Brad Scott, ASSISTANT DISTRICT ATTORNEY
619 South White Street
New Orleans, LA 70119

    COUNSEL FOR RELATOR/THE STATE OF LOUISIANA

Jeffrey L. Smith
2735 Tulane Avenue
New Orleans, Louisiana 70119

    COUNSEL FOR RESPONDENT/DEFENDANT

        **WRIT GRANTED; JUDGMENT VACATED; AND CONVICTIONS AND NEGOTIATED SENTENCES REINSTATED**
        **May 2, 2024**

*RML*

*RLB*

Relator, the State of Louisiana (the "State"), seeks review of the district court's February 21, 2024 judgment, granting Defendant's application for post-conviction relief. For the reasons that follow, we grant the State's writ, vacate the district court's ruling granting post-conviction relief, and reinstate Defendant's convictions and negotiated sentences.

## STATEMENT OF THE CASE

In July 2017, the State charged Defendant with possession of a firearm by a convicted felon, possession of methamphetamine with intent to distribute, possession of heroin with intent to distribute, and armed robbery with a firearm. In April 2019, Defendant pled guilty and received sentences of twenty years imprisonment at hard labor (felon in possession of a firearm); thirty years imprisonment at hard labor (methamphetamine); fifty years imprisonment at hard labor (heroin); and twenty years imprisonment at hard labor (armed robbery with a firearm).

Due to an alleged misunderstanding regarding his eligibility for early release, Defendant filed a motion to reconsider sentence, which ultimately

1

precipitated resentencing. In September 2019, the district court resentenced Defendant to concurrent terms of twenty years imprisonment on all counts. In October 2020, Defendant filed a counseled motion to withdraw his pleas. In August 2021, the State filed a response, suggesting that Defendant should seek review by filing a motion for post-conviction relief. As suggested, Defendant, in January 2022, filed a counseled application.

Following multiple further continuances, the district court conducted a hearing on Defendant's application in November 2023. Thereafter, the district court, on February 7, 2024, granted Defendant's application and, two weeks later, issued written reasons.

## STATEMENT OF THE FACTS

The underlying facts are not relevant given Defendant's guilty pleas. Rather, the relevant facts are those presented at the post-conviction relief hearing. At that hearing, Defendant and all three of his defense attorneys—C. Gary Wainwright, Thomas Calogero, and David Varisco—testified. Mr. Wainwright also submitted an affidavit. The witnesses' testimony is briefly summarized below.

Mr. Wainwright testified that he assisted Mr. Calogero in representing Defendant as it related to the then-pending armed robbery charge. During negotiations with the State, Mr. Wainwright was informed of Defendant's recidivist status as a "triple lifer." This status prompted Defendant to plead guilty to the crimes. Later, upon reviewing his criminal history, Mr. Wainwright learned that Defendant actually faced a range of only twenty years imprisonment to life if convicted of the multiple offenses, as opposed to mandatory life imprisonment. Although Defendant faced a considerably longer than twenty-year mandatory term on the armed robbery count if subsequently adjudicated a recidivist, Mr.

Wainwright claimed that based on the State's weak evidence, the "case was never prosecutable."

Mr. Calogero testified that he was not present when Defendant pled guilty to the amended terms; rather, Mr. Varisco, acting on Mr. Wainwright's behalf, represented Defendant. Regarding the armed robbery, Mr. Calogero claimed that that the State's case was very weak, stemming from a dispute over a drug debt. Like Mr. Wainwright, Mr. Calogero testified that the State had informed him that Defendant qualified as a "triple lifer." The original sentences, which included the fifty-year term, were vacated because the pleas were entered pursuant to the erroneous understanding that Defendant would qualify for early release based on diminution of sentence for good behavior. Like Mr. Wainwright, Mr. Calogero maintained that Defendant may have been misled that he faced a mandatory life sentence if convicted and sentenced as a recidivist. Mr. Calogero also maintained that he never agreed to a term of twenty-five years which Defendant ultimately received on the armed robbery count and that even the district attorney acknowledged "it was 20, not 25."[1]

Mr. Varisco testified that he represented Defendant at resentencing. He conceded that he "went over the [guilty plea] form with [Defendant] and told him what his sentence was going to be." On cross examination, Mr. Varisco testified that he would not have presented Defendant with the plea document if Defendant had ever indicated that he wanted to go to trial.

---

[1] As discussed elsewhere in this writ opinion, the resentencing transcript indeed reflects that the district court sentenced Defendant to a total term of twenty years imprisonment at hard labor on the armed robbery count. That twenty-year term included the five-year enhancement for use of a firearm during the offense.

Defendant testified that he was forty-three years old and that he had been incarcerated on the current charges for seven years. Defendant further testified that he his attorneys had told him that he faced a mandatory life sentence if convicted as charged based on his criminal history.

As noted, Mr. Wainwright also submitted an affidavit to the district court. In his affidavit, Mr. Wainwright attested as follows:

> I was hired to assist Attorney Tommy Calogero, in representing Mr. LeJeune.
>
> Mr. LeJeune was arrested in Buffa's Bar, upon an Arrest Warrant for Armed Robbery by the LASP. At the time of his arrest he was found to be in possession of a firearm, methamphetamine and heroine [sic]. Mr. LeJeune was charged via Bill of Information ["BOI"]:
>
> Ct 1., Armed Robbery of Thomas Clayton with a Firearm;
> Ct 2., PWIT Methamphetamine;
> Ct 3., PWIT Heroine [sic] and
> Ct 4. Felon with a Firearm, listing his federal conviction from the Eastern District Of Louisiana as his predicate.
>
> The purported "armed robbery" case was actually not prosecutable, as it grew out of a dispute over drugs between two drug addicts, Mr. LeJeune and Mr. Clayton.
>
> ADA A. Gaudin, acknowledged as much, and informed Mr. Calogero and myself that if the case proceed to trial, the armed robbery count would be severed and the State would proceed on counts 2-4, only. Further, ADA Gaudin informed me; just as Mr. Calogero had, that Mr. LeJeune was a "triple lifer" and that he would be multiple billed and the law dictated that he be sentenced to Natural Life without Parole.
>
> Mr. Calogero and myself, arranged a meeting with D.A. Leon Cannizzaro, to plead Mr. LeJeune's matter. Mr. Gaudin participated in this meeting. Once again Mr. Lejeune's being a "triple lifer" was the centerpiece of the discussion negotiating a putative resolution in the matter.
>
> DA Cannizzaro, referenced that status, in fashioning what he believed to be a "fair" resolution. A plea that centered about [sic] the Armed Robbery Count and required a 20 year sentence for armed robbery with a firearm, 20 years for felon with a firearm, 30 years for PWIT methamphetamine and 50 years for PWIT heroine, all sentences to be run concurrent.

As throughout my participation in this matter, I was told that Mr. LeJeune was a "triple lifer" if he went to trial, I clearly, forcefully and in terms that left nothing to the imagination, repeatedly informed Mr. LeJeune, that if he proceeded to trial and was found guilty as charged, particularly upon the Felon with a Firearm Count and drug counts, he would receive a sentence that would "require him to die in a Louisiana prison and never be free again for the balance of his natural life."

Throughout this case, I was never in possession of Mr. LeJeune's actual RAP sheet or record of convictions. I and my assistant, attorney David J. Varisco, accepted that ADA Gaudin and Mr. Calogero, had accurately calculated Mr. LeJeune's multiple offender exposure.

Not surprisingly, given my three decades of experience practicing in the Criminal District Court and with the Louisiana Department of Corrections, Mr. LeJeune's "plea bargain" was not accurately reflected in the relevant documentation and he was brought back for re-sentencing.

Even after his being re-sentenced, his actual plea bargain was not being accurately reflected by the DOC.

On October 27th 2020, I filed a Motion to Withdraw Defendant's Guilty Plea and attached Mr. LeJeune's DOC RAP sheet, demonstrating that his plea bargain, was not being accurately reflected by the DOC.

I honestly believed that withdrawing his plea and having a new "clean" sentencing hearing, would be the most expeditious manner to clear up the mistake(s).

This was, of course, in the midst of the global COVID-19 pandemic. Additionally, Mr. Cannizzaro, had not run for re-election and a new DA took office, Jason Williams.

Surprisingly, the new DA's office, expressed that they would rather see this matter addressed via a Post Conviction Relief Application and agreed that the application, would relate back to the October 27, 2020, filing.

Ultimately, as [I] sought to prepare Mr. LeJeune's PCR and I attempted to ferret out, what was the source of the error, on November 2nd 2021, ADA Brad Scott provided me and attorney Valon Hicks, a copy of Mr. LeJeune's RAP sheet[.] I engaged Ms. Hicks, to provide a "fresh look" at this record and to sort out where the error was. Once we were provided the RAP sheet, she assisted by gathering background documentation regarding his listed offences and in calculating Mr. LeJeune's exposure as a multiple offender.

After an arduous effort at gathering documentation, close examination of LeJeune's RAP sheet and examination of the instant

5

BOI, we reached the conclusion that Mr. LeJeune was never a "triple lifer" and was never exposed to a mandatory minimum, sentence of natural life as multiple offender.

Our opinion was and is that he is either an "ordinary third" or "ordinary fourth" offender. The fact that the State had listed his federal conviction as the predicate in Count 4 of the BOI is what lead us to this conclusion.

Mr. LeJeune was repeatedly, erroneously informed by myself, Mr. Varisco and Mr. Calogero, that he was facing mandatory "life without parole" upon conviction. This was in error.

Following the post-conviction relief hearing, the district court issued a *per curiam*, setting forth the following reasons for granting post-conviction relief:

On February 7, 2024, this Court granted relief to the Post Conviction Relief request filed by defendant, Casey Lejeune. This Court's decision is based on the following.

On November 9, 2023 defendant's attorneys, all three of whom variously took part in advising the client, negotiating with the state, and entering the guilty plea itself, were present and testified before the court as to their involvement with the case. At the end of their testimony, this court was left with the distinct impression that communication among the lawyers themselves as well as the communication between the defendant and his lawyers was confused enough to be considered ineffective assistance.

The confusion and opacity surrounding mandatory minimum sentencing requirements as relayed to the defendant by his attorneys, particularly regarding plea bargaining has been reduced to writing by one of the defendant's former attorneys and this court holds that the errors by defense counsel were severe enough to warrant granting defendant's requested post-conviction relief.

This writ by the State followed.

## DISCUSSION

The Louisiana Supreme Court has observed that its "[e]stablished jurisprudence . . . provides that the Sixth and Fourteenth Amendments and La. Const. art. I, § 2 and § 13 protect a defendant pleading guilty." *State v. West*, 09-2810, p. 1 (La. 12/10/10), 50 So.3d 148, 149. The Supreme Court has further

6

observed that "[w]hen a defendant enters a counseled plea of guilty, this court will review the quality of counsel's representation in deciding whether the plea should be set aside." *State v. Beatty*, 391 So.2d 828, 831 (La. 1980); *see also State v. Scott*, 93-0401 (La. 3/17/95), 651 So.2d 1344.

The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges of guilty pleas based on claims of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *State v. Washington*, 491 So.2d 1337, 1339 (La. 1986). Under the *Strickland* test, a reviewing court must reverse a conviction if the defendant establishes the following two requirements: (i) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (ii) that counsel's inadequate performance prejudiced the defendant to the extent that the proceedings were rendered unfair and the conviction suspect.

As an initial matter, Defendant's resentencing transcript reflects that the district court fully advised him of his constitutionally guaranteed right to trial by jury, right of confrontation, and right against compulsory self-incrimination as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *State ex rel. Jackson v. Henderson,* 260 La. 90, 255 So.2d 85 (1971). Defendant's resentencing transcript reflects, pursuant to a joint motion, the State and defense entered a new plea agreement. Under the new agreement, Defendant would receive "20 years on all counts"; and the armed robbery sentence would be "15 years as to the [La. R.S. 14:]64, with 5 years consecutive as to the firearm enhancement required by [La. R.S.] 64.3." Defendant also admitted his status as a recidivist (second) offender on the heroin charge in exchange for a twenty-year

sentence on that count. The district court set forth the range of penalties on the charges, and informed Defendant of his rights as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Defendant expressed his satisfaction with his attorneys' representation. The district court then sentenced Defendant to the agreed upon terms—fifteen years imprisonment at hard labor for armed robbery with a five-year consecutive term imposed for his use of a firearm during the commission of the offense; and three concurrent terms of twenty years imprisonment on the methamphetamine, heroin, and felon in possession of a firearm counts. As agreed, Defendant then admitted his status as second felony offender; and the district court imposed the same twenty-year term on the heroin conviction.

Notwithstanding Mr. Wainwright's affidavit coupled with his attorneys' post-conviction hearing testimony, the record is unclear whether Defendant was materially misadvised concerning his sentencing exposure. The State's application indicates that Defendant had at least three prior felony convictions. Even if the statutes in effect at the time Defendant committed the underlying offense in this case did not require a life sentence, Defendant faced a term not less than the longest prescribed for a first conviction as a fourth offender. *See* La. R.S. 15:529.1(A)(4)(a).[2] That term far exceeded the twenty-year sentences the district court imposed on Defendant pursuant to the negotiated plea bargain. Although

---

[2] La. R.S. 15:529.1(A)(4) provides as follows:

> If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life . . .

defense attorneys repeatedly asserted at the post-conviction hearing that the State's armed robbery case against Defendant was weak, the police reports suggest otherwise. If convicted of armed robbery and sentenced only as a second felony offender, Defendant faced, on that offense alone, a minimum of forty-nine and one-half years imprisonment at hard labor without benefit of parole. Even if Defendant's attorneys misadvised him that he faced a mandatory parole ineligible life term, his attorneys negotiated a favorable plea bargain on his behalf; and Defendant failed to show that his attorneys' performance fell below professional norms.

Moreover, even if he was misadvised by his attorneys, Defendant failed to demonstrate resulting prejudice. The *Strickland* prejudice prong focuses on whether counsel's ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. "[I]n order to satisfy the 'prejudice' prong, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, *supra*; *Washington*, 491 So.2d at 1339. Here, if adjudicated only a second felony offender and acquitted of the armed robbery count, Defendant faced terms of up to forty years imprisonment on the felon in possession count, sixty years imprisonment at hard labor on the methamphetamine count, and 100 years imprisonment on the heroin count.[3] Under this scenario, Defendant failed to demonstrate that defense attorneys' claimed deficient performances prejudiced him.

---

[3] In Mr. Wainwright's affidavit, he stated his opinion that Defendant was either an "ordinary third" or "ordinary fourth" offender.

In sum, even assuming Defendant's attorneys provided him with inaccurate information concerning his sentencing exposure, Defendant failed to demonstrate that but for that misinformation he would have not have pled guilty pursuant to a favorable plea agreement and gone to trial on the multiple charges. This is especially true given Defendant's recidivist offender status. Accordingly, we grant the state's writ, vacate the district court's order granting post-conviction relief, and reinstate the convictions and negotiated sentences.

**WRIT GRANTED; JUDGMENT VACATED; AND CONVICTIONS AND NEGOTIATED SENTENCES REINSTATED**